OPINION
{¶ 1} Tina L. LaFerrara, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which a jury found appellant guilty of forgery, in violation of R.C.2913.31, a fifth-degree felony, and receiving stolen property, in violation of R.C. 2913.51, a fifth-degree felony.
 {¶ 2} On September 3, 2002, appellant attempted to cash a $1,000 check at a CheckSmart store. The check was payable to appellant and drawn on Frank McLain's checking account. The pre-printed phone number on the check was scratched out and was replaced with a handwritten phone number. The pre-printed "19" in the date blank was also scratched out and replaced with a handwritten "2002." Further, written on the memo line was "LOAA" or "LOAN" with a stray line through the "N." In completing the CheckSmart application, appellant gave a CheckSmart employee, Michael Gasson, her Florida driver's license and her social security card.
 {¶ 3} Because the check was for a large amount, Gasson attempted to verify the information on the check through several phone calls and various other investigative techniques. After calling the handwritten number on the check, Gasson spoke to a man claiming to be McLain, who confirmed he wrote the check to appellant and was able to recite his social security number. Gasson told the man he would be calling back with more questions. Gasson retrieved more information via a "Social Security trace," and called the man again. The man was unable to recite his previous address and his past employment, and it took him about 15 seconds to recall his birth year. Gasson then looked up McLain's phone number in a "crisscross" directory and found a different number than the one on the check. He called the number and spoke with another person who claimed to be McLain. The man said he never wrote a check to appellant and informed Gasson his checkbook had been stolen. Gasson called the police and, after arresting appellant, the police found McLain's driver's license in appellant's possession.
 {¶ 4} Appellant contended that, earlier in the day, a woman named Mary contacted her about purchasing a car appellant had placed a "for sale" sign on. The two met, and Mary presented a $1,000 check drawn on McLain's checking account. Mary indicated the account was her husband's, but that she had authority to sign the check. Appellant claimed that, after verifying funds were available in the account via a payphone call to the bank, she accepted the check. She testified that she and Mary then drove to a notary that Mary knew in order to notarize the car title. Appellant said that Mary gave McLain's driver's license to the notary and told her to put the title in McLain's name. Appellant testified that, later that day, she wished to purchase a pack of cigarettes. Because she did not have any money, she went to CheckSmart to cash the check. She claimed at trial that she did not know she had McLain's driver's license and that the notary must have mistakenly given it to her.
 {¶ 5} McLain testified at trial that, on the morning of September 3, 2002, he had allowed somebody named "Mary" to enter his home to change clothes in his bedroom, where he kept his old checks. Mary, whom he had never met before, had claimed to be a friend of one of McLain's friends. McLain then took Mary to have her taxes filed, bought her lunch, and drove her back to his house. She left his house, and he never saw her again.
 {¶ 6} On October 31, 2003, appellant was indicted on one count of receiving stolen property, one count of forgery, and one count of possession of criminal tools. Following a jury trial, appellant was found guilty of forgery and receiving stolen property and not guilty of possession of criminal tools. Appellant was later sentenced to 37 days incarceration, in addition to time served, and two years of community control following her release. Appellant was also ordered to maintain employment and pay court costs in the amount of $1,389. Appellant appeals the judgment of the trial court, asserting the following two assignments of error:
I. Appellant's convictions for forgery and receiving stolen property were unsupported by sufficient evidence.
II. Appellant's convictions for forgery and receiving stolen property were against the manifest weight of the evidence.
 {¶ 7} We will address appellant's assignments of error together. Appellant argues in her assignments of error that the trial court's judgment was based upon insufficient evidence and against the manifest weight of the evidence. When determining whether a conviction is against the manifest weight, the court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, citing State v. Martin (1983),20 Ohio App.3d 172. However, when an appellate court reviews a claim that a conviction is not supported by sufficient evidence, its inquiry focuses primarily upon the adequacy of the evidence.Thompkins, at 386. Sufficiency is a term of art that tests whether, as a matter of law, the evidence presented at trial is legally sufficient to sustain a verdict. Id. The standard of review is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 8} The jury found appellant guilty of forgery, in violation of R.C. 2913.31, and receiving stolen property, in violation of R.C. 2913.51, a fifth-degree felony.
 {¶ 9} R.C. 2913.31 provides:
(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
* * *
(3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged.
 {¶ 10} R.C. 2913.51 provides:
(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.
 {¶ 11} With regard to the receiving stolen property verdict, appellant claims the state failed to prove that she knew or had reasonable cause to believe the check was stolen. We disagree. Absent an admission by a defendant, the question of whether there was reasonable cause for a defendant to know if an item was stolen can only be shown by circumstantial evidence. See Statev. Hankerson (1982), 70 Ohio St.2d 87, 92. Factors to be considered in determining whether reasonable minds could conclude whether a defendant knew or should have known property has been stolen include: (a) the defendant's unexplained possession of the merchandise; (b) the nature of the merchandise; (c) the frequency with which such merchandise is stolen; (d) the nature of the defendant's commercial activities; and (e) the relatively limited time between the theft and the recovery of the merchandise. SeeState v. Davis (1988), 49 Ohio App.3d 109, 112. Further, in a prosecution for receiving stolen property, the jury may arrive at a finding of guilt by inference when the accused's possession of recently stolen property is not satisfactorily explained in light of surrounding circumstances developed from the evidence. Statev. Arthur (1975), 42 Ohio St.2d 67.
 {¶ 12} In the present case, the jury could have found the elements of receiving stolen property were proven beyond a reasonable doubt. There were several facets of appellant's story regarding her receipt of the check that the jury could have found unbelievable. Appellant claimed to have accepted a $1,000 check from somebody she did not know, Mary, even though Mary's name was not on the check. Appellant also testified that she watched Mary sign Frank McLain's name on the check; yet, she claimed to have not asked Mary for any identification. In addition, appellant stated that Mary scratched out the pre-printed phone number on the check and replaced it with a handwritten phone number, and she also scratched out the pre-printed "19" in the date blank and replaced it with a handwritten "2002." The jury could have found that, under these suspicious circumstances, a reasonable individual would have inquired more into the validity of the check, thereby placing the veracity of appellant's entire story in question. Also, written on the memo line of the check was "LOAN" or "LOAA," which appellant failed to explain at trial. Certainly, if the notation on the check was "LOAN," such would be incongruous with appellant's claim that the check was written for the purchase of a car. At the very least, the unexplained notation could be interpreted by the jury to demonstrate that appellant received the check for some other reason than the sale of a car. We also note that Gasson testified that appellant never told him that she had just received the check from somebody named Mary but told him she had received it from Frank McLain.
 {¶ 13} Similarly, the jury could have disbelieved appellant's testimony that she received the check for the sale of a vehicle. Appellant failed to present a shred of documentary evidence to demonstrate that such a transaction ever took place, and her testimony served only to add further doubt to her claim. Appellant testified that Mary never test drove the 12-year-old car or had the car inspected by a mechanic. Appellant also claimed the title for the car was notarized by somebody Mary knew; yet, appellant failed to provide the name or any description of the alleged notary. Appellant also testified that she did not remember where the alleged notary lived. Gasson testified that appellant never mentioned to him that she had just sold a car to a person named Mary. Therefore, the testimony presented at trial did little to buttress appellant's version of the facts and, in fact, the logical voids weakened her contentions.
 {¶ 14} The jury could have also found that appellant's apparent naivety throughout the alleged automobile transaction was implausible. Appellant possessed associate degrees in accounting and bookkeeping. Although she claimed that she had no experience with transactions involving the sale of cars, appellant testified that she was familiar with checks and commercial transactions. Thus, she was not an unsophisticated individual who was unwise to financial matters. The jury could have simply found appellant's claimed failure to verify Mary's identity and Mary's relationship to McLain strained reasonable belief because of her financial background.
 {¶ 15} Furthermore, the jury could have found appellant's explanation as to why she had McLain's license at the time of her arrest unbelievable. Although appellant claims that the notary must have mistakenly returned the license to her instead of Mary, and she was unaware she had it, the jury could have found this explanation unconvincing. Appellant contended that the notary had handed to her her driver's license, social security card, and insurance card in a single stack and, thus, she did not notice McLain's license was also in the stack. However, at CheckSmart, she was required to give Gasson her driver's license and her social security card. The jury could have believed that appellant would have discovered McLain's license while at CheckSmart. We also note that McLain testified that, when appellant called him after she was released on bail, she never explained to him how she got his driver's license. Thus, the jury could have discounted appellant's testimony based on these illogicalities.
 {¶ 16} Appellant also presents several other arguments that we find unpersuasive. Appellant asserts the fact that she gave Gasson her real social security number, name, and driver's license demonstrates her innocence. However, given the check was payable to her, she had no other option than to present proper identification. Without setting up a more complicated scheme, such as several false identifications and false references from cohorts, appellant had no other choice than to use her real identify. Further, appellant also points out that she did not flee the scene while Gasson investigated or after he called the police. However, her failure to flee is also not necessarily indicative of appellant's innocence. She had already given Gasson her social security card and driver's license, so she may well have concluded that fleeing at that point was not a wise option. More importantly, appellant specifically testified at trial that, after she completed the application and gave Gasson her identification, Gasson never talked to her again, and she was surprised when the police arrived. This testimony is in direct contravention to appellant's present argument.
 {¶ 17} In sum, the jury simply did not believe appellant's testimony. With regard to the sufficiency of the evidence claim, an appellate court does not weigh credibility. See State v.Coit, Franklin App. No. 02AP-475, 2002-Ohio-7356, citing Rutav. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68-69. Even though a manifest weight of the evidence challenge allows us to review the record and weigh the evidence, such is strongly tempered by the principle that questions of weight and credibility are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus;State v. Garrow (1995), 103 Ohio App.3d 368, 371. The jury apparently found appellant's testimony not credible, and we have been presented with no reason to disturb that determination. The state presented evidence to support the elements of both the forgery and receiving stolen property counts, and appellant failed to present credible evidence to support her claims in defense. For the reasons stated above, we find the jury did not clearly lose its way, and any rational trier of fact could have found all the essential elements of receiving stolen property proven beyond a reasonable doubt. Therefore, the verdict was supported by sufficient circumstantial evidence, and it was not against the manifest weight of the evidence.
 {¶ 18} With regard to the forgery verdict, appellant similarly claims that the state failed to prove that she knew that the check was forged. However, for the same reasons explained above, we find appellant's arguments unpersuasive. The highly dubious story surrounding the alleged automobile transaction, as well as the doubtful explanation of her possession of McLain's driver's license, tend to discredit appellant's version of the facts. Thus, we find the state established the elements of forgery beyond a reasonable doubt, and the jury's verdict relating to such was not against the manifest weight of the evidence. Therefore, appellant's first and second assignments of error are overruled.
 {¶ 19} Accordingly, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Sadler, JJ., concur.