OPINION
{¶ 1} Defendant-appellant, Robert F. Skinner ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, convicting him of one count of receiving stolen property, a fourth-degree felony, in violation of R.C. 2913.51, entered upon a jury verdict of guilty to same.
 {¶ 2} The underlying facts as adduced at trial are as follows. On November 9, 2007, at approximately 4:50 a.m., Columbus Police Officers McCotter and Lavender were patrolling the area near the intersection of Glendower Avenue and Eagle Street, in Columbus, Franklin County, Ohio. A loud noise was heard that Officer McCotter believed *Page 2 
to be from a loud exhaust. Officer McCotter saw a pickup truck with its lights off being driven in a field behind Pick-N-Pull Auto Dismantlers ("Pick-N-Pull"), a used automobile parts dealer. Shortly thereafter, the vehicle's lights became illuminated. Officer McCotter stopped his cruiser and directed his cruiser's spotlight toward the truck, whereupon he observed a passenger exit the truck and begin running away. The driver, later identified as appellant, remained in the truck.
 {¶ 3} Officer McCotter approached the truck and inquired as to why appellant was in the field and where the passenger went. Appellant indicated they were in the field to dump trash; however, after getting worried that they would get caught, they decided against it. According to Officer McCotter, appellant told him the passenger had to "take a leak." (Tr. at 132.) Officer McCotter described appellant as wearing overalls that were dirty with wet mud "like he had been laying on the ground." Id. at 137. An identification check was run on appellant, and appellant granted consent for the police officers to search the truck. In the bed of the truck, Officer McCotter observed trash on a sheet of plywood that was resting on 112 catalytic converters, which had orange paint on them. The catalytic converters were unloaded from the truck and taken to the police property room. Appellant was released pending further identification to identify the catalytic converters' owner.
 {¶ 4} The investigation revealed the catalytic converters with orange spray paint were stolen from Pick-N-Pull. It appears someone broke into the padlocked container that housed the catalytic converters. A hole, large enough for a person to slide under, was discovered in the fence surrounding Pick-N-Pull. The hole was located adjacent to the field in which appellant was found by Officer McCotter. *Page 3 
 {¶ 5} John Esterly, a Pick-N-Pull employee, described that four-foot by four-foot cardboard boxes were used to store the catalytic converters until they could be shipped to a recycler in Texas. Each box holds approximately 100 catalytic converters. Once full, the boxes are stored in large padlocked containers. Pick-N-Pull's practice was to spray paint the catalytic converters with orange spray paint to designate them as Pick-N-Pull's. Mr. Esterly testified the catalytic converters were worth $11,000, and that the least they had ever received for a box of catalytic converters was $5,000.
 {¶ 6} Appellant was indicted by the Franklin County Grand Jury on January 16, 2008, for one count of receiving stolen property, a fourth-degree felony, in violation in R.C. 2913.51. It was alleged in the indictment appellant received or retained automobile catalytic converters valued between $5,000 and $100,000. A jury trial commenced on April 22, 2008, and the jury returned a guilty verdict on April 24, 2008. A sentencing hearing was held on May 15, 2008, and appellant was sentenced to a term of incarceration of 15 months, and was awarded 130 days of jail-time credit. This appeal followed and appellant brings the following single assignment of error for our review:
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION, AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF DEFENDANT-APPELLANT'S RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL GUARANTEED BY AMENDMENTS V AND XIV OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 {¶ 7} The Supreme Court of Ohio described the role of an appellate court presented with a sufficiency of the evidence argument in State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus: *Page 4 
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)
 {¶ 8} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v.Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Thomas (1982),70 Ohio St.2d 79, 80. Thus, a jury verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460, 484;Jenks, supra.
 {¶ 9} A manifest-weight argument is evaluated under a different standard. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16, citation omitted. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the *Page 5 
fact-finder's resolution of the conflicting testimony.Thompkins, supra, at 387. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 10} A defendant is not entitled to a reversal on manifest-weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v.Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v.Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. The trier of fact is free to believe or disbelieve all or any of the testimony. State v.Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973; State v.Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact-finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 22; State v.Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 17. *Page 6 
 {¶ 11} Appellant was found guilty of receiving stolen property, in violation of R.C. 2913.51, which provides, in relevant part:
 (A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.
 * * *
 (C) Whoever violates this section is guilty of receiving stolen property. * * * [I]f the value of the property involved is five thousand dollars or more and is less than one hundred thousand dollars, * * * receiving stolen property is a felony of the fourth degree. * * *
 {¶ 12} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "[O]ne has `reasonable cause to believe' property was obtained through a theft offense when, after putting oneself in the position of this defendant, with his knowledge, lack of knowledge, and under the circumstances and conditions that surrounded him at the time, the acts and words and all the surrounding circumstances would have caused a person of ordinary prudence and care to believe that the property had been obtained through the commission of a theft offense."State v. Kirby, Franklin App. No. 06AP-297, 2006-Ohio-5952, at ¶ 11, citing State v. Braxton (1995), 102 Ohio App.3d 28.
 {¶ 13} To determine the value of property involved in the offense, R.C. 2913.61(D)(3) provides:
 The value of any real or personal property that is not covered under division (D)(1) or (2) of this section, and the value of services, is the fair market value of the property or services. *Page 7 
 As used in this section, "fair market value" is the money consideration that a buyer would give and a seller would accept for property or services, assuming that the buyer is willing to buy and the seller is willing to sell, that both are fully informed as to all facts material to the transaction, and that neither is under any compulsion to act.
 {¶ 14} Although here there was no direct evidence that appellant knew the catalytic converters had been obtained through theft, the jury could have found beyond reasonable doubt that appellant had reasonable cause to believe the property was obtained through theft. "When, as here, a disputed element of the offense charged is, by its nature, not susceptible of proof by direct evidence, circumstantial evidence may be used to provide an inference of guilt." Kirby at ¶ 12, citing State v.Pruitt (May 14, 1986), Hamilton App. No. C-850392. Indeed, circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence. Id., citing State v. Ballew (1996),76 Ohio St.3d 244, 249, citing State v. Lott (1990), 51 Ohio St.3d 160, 167, citingMichalic v. Cleveland Tankers, Inc. (1960), 364 U.S. 325, 330,81 S.Ct. 6. Absent an admission by a defendant, whether there was reasonable cause for a defendant to know if an item was stolen can only be shown by circumstantial evidence. Id.
 {¶ 15} Regarding the sufficiency of the evidence, based upon the testimony and evidence presented at trial, the jury could have found it would have been unreasonable for appellant to believe the catalytic converters were not stolen. When opening for business on November 9, 2007, it was reported that a large number of catalytic converters had been stolen from Pick-N-Pull. Officers McCotter and Lavender observed a truck driving in a field behind Pick-N-Pull with its headlights off at approximately 4:50 a.m., on November 9, 2007. When the officers lit up the truck with a spotlight, the passenger fled and was not apprehended. Appellant told the officers he and his *Page 8 
passenger were in the field to dump trash and that his passenger had to go to the bathroom. Officer McCotter testified appellant was wearing overalls covered with what appeared to be wet, fresh mud. Appellant consented to a search of his truck which revealed 112 catalytic converters painted with orange paint. The catalytic converters were under a sheet of plywood that was covered with trash. A fence surrounding Pick-N-Pull had a hole in it large enough for a person to slide under it. The hole was located in the portion of the fence adjacent to the field where appellant was found in the truck.
 {¶ 16} Mr. Esterly explained the payment process for the catalytic converters as follows. The recycler pays Pick-N-Pull a provisional $5,000 amount for a box of catalytic converters. Once the recycler breaks down the box and dismantles the catalytic converters, the recycler determines the value and Pick-N-Pull either gets more than the provisional $5,000, or an amount deducted from the $5,000. Mr. Esterly testified he viewed the catalytic converters in the Columbus Police Department property room and estimated their value to be $11,000. Mr. Esterly conceded when asked on cross-examination that the value of an individual catalytic converter can range from $30 to $500 depending on certain criteria; however, Mr. Esterly testified the least they had ever received for a box of catalytic converters was $5,000. (Tr. at 116.)
 {¶ 17} Construing the evidence in favor of the prosecution, as is required when reviewing the sufficiency of the evidence, a reasonable trier of fact could have found the essential elements of receiving stolen property as a fourth-degree felony proven beyond a reasonable doubt. Therefore, we cannot conclude there is insufficient evidence to sustain appellant's conviction. *Page 9 
 {¶ 18} Similarly, we do not find that the jury's verdict was against the manifest weight of the evidence. The basis for appellant's manifest-weight challenge is primarily the lack of direct evidence and the alleged lack of evidence pertaining to the value of the catalytic converters. While appellant asserts the jury clearly lost its way and created a manifest miscarriage of justice in this case, we reiterate that a conviction is "`not against the manifest weight of the evidence simply because the jury believed the prosecution testimony.'" State v.Abdul-Rahman, Franklin App. No. 06AP-783, 2007-Ohio-2386, at ¶ 16, citing State v. Moore, Montgomery App. No. 20005, 2004-Ohio-3398, quoting State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757.
 {¶ 19} We have reviewed the entire record and weighed the evidence and all reasonable inferences to be drawn therefrom and have considered the credibility of the witnesses. After review of the record, we conclude that there is nothing to indicate that the jury clearly lost its way or that appellant's conviction creates a manifest miscarriage of justice. Consequently, we cannot say that defendant's conviction is against the manifest weight of the evidence.
 {¶ 20} For the foregoing reasons, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
 SADLER and TYACK, JJ., concur. *Page 1