[Cite as *State v. Johnson*, 2020-Ohio-4077.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 19AP-296 |
| | | (C.P.C. No. 18CR-2499) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Raymon L. Johnson, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 13, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

**On brief:** *Todd W. Barstow,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Raymon L. Johnson, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of receiving stolen property. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} By indictment filed May 23, 2018, plaintiff-appellee, State of Ohio, charged Johnson with one count of receiving stolen property in violation of R.C. 2913.51, a fourth-degree felony. Johnson entered a plea of not guilty.

{¶ 3} At a jury trial beginning February 19, 2019, Don Olson, an officer with the Columbus Division of Police, testified that around 2:00 a.m. on May 20, 2018 he and his partner, Officer William Phillips, noticed an improperly parked tan Toyota Sienna minivan at the intersection of Cordell Avenue and Cleveland Avenue. The officers observed that the

minivan was unattended and that the dome light was on inside the vehicle. Upon approaching the vehicle, the officers noticed a wallet on the center console. Once the officers were standing beside the minivan, they saw Johnson walk out of an alley and continue walking toward Cleveland Avenue. The officers asked Johnson if the minivan was his and he told them it was not, he then continued walking away quickly around a corner and out of sight.

{¶ 4} Officer Olson testified he and his partner ran the license plate on the minivan and the plate came back as belonging to a different vehicle. The vehicle was unlocked, and Officer Wilson opened the passenger door, retrieved the wallet, wrote down the name on the identification in the wallet, and then placed the wallet on the passenger seat. While Officer Wilson was going back to the police cruiser to run the name obtained from the identification inside the wallet, Officer Olson saw Johnson come back around the building and walk toward the officers and the minivan. Officer Olson testified that he asked Johnson his name but Johnson did not respond; instead, Johnson "quickly dove" toward the open passenger door and reached inside the vehicle. (Tr. Vol. 1 at 81.) At that point, the officers detained him. The officers were wearing body cameras and activated the cameras after detaining Johnson. The state played the body camera footage from the interaction during the trial.

{¶ 5} Once the officers had detained Johnson, they searched him and found a key to the minivan in Johnson's pocket. Johnson told the officers the key belonged to his friend who he claimed owned the vehicle. Johnson provided his name and insisted that the wallet was his. When the officers asked him why the identification in the wallet had someone else's name, Johnson replied that the identification belonged to his friend who died.

{¶ 6} Officer Phillips testified that when he searched the van, he found bolt cutters and a large vent in the back. The officers also found bolt cutters on Johnson's person when they searched him. Officer Phillips further testified that he looked around at the nearby buildings and noticed a vent missing from the back of one of the buildings and there was a wooden box underneath. Officer Phillips said it looked like someone had attempted to climb into the building through the vent opening.

{¶ 7} The officers transported Johnson to police headquarters, and Detective Charles Jervis continued to interview Johnson. Johnson admitted that he had been inside

the minivan before the officers arrived at the scene, but he stated he did not steal the vehicle, did not know it was stolen, and asserted the vehicle belonged to "Johnny."  (Tr. Vol. 2 at 216.)  He also told Detective Jervis that while he does not steal cars or break into houses, he does steal from stores.

{¶ 8}    The owner of the vehicle, Raquel Dowdy-Cornute, testified that her vehicle was stolen approximately one and one-half months before it was recovered, that she reported the theft to the police, and that she did not know Johnson.  Additionally, Colin Vent, the person whose identification was found inside the wallet, testified that someone broke into his home on March 4, 2018, stealing both his wallet and identification.  Vent testified he did not know Johnson.

{¶ 9}    At the conclusion of the trial, the jury returned a verdict of guilty on the sole count of receiving stolen property, and the jury further found the property was a motor vehicle.  At an April 3, 2019 sentencing hearing, the trial court sentenced Johnson to 18 months in prison and imposed a fine of $5,000.  The trial court journalized Johnson's conviction and sentence in an April 4, 2019 judgment entry.  Johnson timely appeals.

## II.  Assignment of Error

{¶ 10} Johnson assigns the following error for our review:

> The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of receiving stolen property as that verdict was not supported by sufficient evidence and was also against the manifest weight of the evidence.

## III.  Analysis

{¶ 11} In his sole assignment of error, Johnson argues his conviction for receiving stolen property is not supported by sufficient evidence and is against the manifest weight of the evidence.

### A.  Sufficiency of the Evidence

{¶ 12} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Sufficiency is a test of adequacy. *Id.*  The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to

find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 13} The jury convicted Johnson of one count of receiving stolen property in violation of R.C. 2913.51. To convict a defendant of receiving stolen property, the state is required to prove that the defendant received, retained, or disposed of property of another, knowing or having reasonable cause to believe that the property had been obtained through the commission of a theft offense. R.C. 2913.51(A); *State v. Conway*, 10th Dist. No. 03AP-585, 2004-Ohio-1222, ¶ 18, citing *State v. Cunningham*, 10th Dist. No. 01AP-1375, 2002-Ohio-4312, ¶ 7. "[I]f the property involved is a motor vehicle * * *, receiving stolen property is a felony of the fourth degree." R.C. 2913.51(C).

{¶ 14} Johnson asserts there was insufficient evidence to prove he had knowledge or reasonable cause to believe that the vehicle was stolen. Pursuant to R.C. 2901.22(B):

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B). Additionally, " 'one has "reasonable cause to believe" property was obtained through a theft offense when, after putting oneself in the position of th[e] defendant, with his knowledge, lack of knowledge, and under the circumstances and conditions that surrounded him at the time, the acts and words and all the surrounding circumstances would have caused a person of ordinary prudence and care to believe the property had been obtained through the commission of a theft offense.' " *State v. Skinner*, 10th Dist. No. 08AP-561, 2008-Ohio-6822, ¶ 12, quoting *State v. Kirby*, 10th Dist. No. 06AP-297, 2006-Ohio-5952, ¶ 11.[1]

---

[1] We do not agree with the assertion in the separate opinion that our citation to *Skinner* conflates sufficiency of the evidence with manifest weight of the evidence. *Skinner*, both by the wording of the assigned error

{¶ 15} When determining whether a person acts knowingly, has knowledge of the circumstances, has knowledge of a particular fact, or has reasonable cause to believe the property was stolen, the trier of fact must determine the person's state of mind from the totality of the circumstances surrounding the alleged crime. *State v. Ingram*, 10th Dist. No. 11AP-1124, 2012-Ohio-4075, ¶ 22; *State v. Collins*, 10th Dist. No. 11AP-130, 2012-Ohio-372, ¶ 12, citing *State v. Arthur*, 42 Ohio St.2d 67, 68 (1975). Culpable mental states are frequently determined from the totality of the circumstantial evidence. *Ingram* at ¶ 22; *State v. Stanley*, 10th Dist. No. 06AP-323, 2007-Ohio-2786, ¶ 31 (noting that "absent an admission" by the defendant, the surrounding facts and circumstances, including the defendant's actions, determine whether a defendant knowingly possessed a controlled substance).[2]

{¶ 16} In determining whether reasonable minds could conclude that a defendant knew or should have known property has been stolen, courts can consider the following factors: (1) the defendant's unexplained possession of the property, (2) the nature of the property, (3) the frequency with which such property is stolen, (4) the nature of the defendant's commercial activities, and (5) the time between the theft offense and the recovery of the property. *Collins* at ¶ 14; *State v. LaFerrara*, 10th Dist. No. 03AP-747, 2004-Ohio-1978, ¶ 11.

{¶ 17} Here, Johnson did not provide a satisfactory explanation for his possession of the vehicle. Though he claimed his friend had been allowing him to drive the vehicle, he could not provide the name of the vehicle's owner and did not know where the owner was. He additionally provided a story about the wallet that was found inside the vehicle. He said that the identification in the wallet belonged to his deceased friend. However, Vent testified at trial that he did not know Johnson and that the identification belonged to him and was stolen from his house earlier that same month. The officers testified that the vehicle was discovered parked on a sidewalk with an interior light on in a part of town where stolen cars

---

and by the contents of the analysis, involves both sufficiency of the evidence and manifest weight of the evidence. *Skinner* at ¶ 6-8, 17.

[2] We further disagree with the separate opinion's characterization of our citation to *Ingram* as expanding its application. As used in paragraph 15, we do not cite *Ingram* in isolation; rather, we cite *Ingram* in conjunction with *Collins*, citing *Arthur*. We also disagree with the separate opinion's attempts to create a narrowing to the longstanding body of caselaw establishing that a trier of fact must determine a defendant's culpable mental state from the surrounding facts and circumstances.

are frequently found. Johnson also admitted to stealing from stores, and he was found with bolt cutters on his person. The officers additionally found bolt cutters and a large vent inside the minivan. From these circumstances, there was sufficient evidence to prove Johnson knew or had reasonable cause to believe that the vehicle was obtained through the commission of a theft offense.

### B. Manifest Weight of the Evidence

{¶ 18} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 19} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 20} Johnson argues his conviction is against the manifest weight of the evidence because he told officers that he did not know the vehicle was stolen. However, the presence of conflicting testimony does not render a verdict against the manifest weight of the

evidence.  *State v. Lindsey*, 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 43, citing *Raver* at ¶ 21.  Additionally, a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version.  *Lindsey* at ¶ 43, citing *State v. Gale*, 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19.  As we noted above, the trier of fact remains to believe "all, part, or none of a witness's testimony." *Raver* at ¶ 21.  Here, the jury was able to view the body camera footage of Johnson's interactions with the officers on the scene, and the jury was able to listen to the audio recording of Johnson's interview at police headquarters.  The jury was also able to assess the credibility of the police officers and the other witnesses who appeared at trial.  In light of the evidence discussed above, as well as the record in its entirety, we do not find the trial court clearly lost its way in concluding Johnson knew or had reasonable cause to believe the vehicle was stolen.

{¶ 21} For these reasons, we conclude the sufficiency and manifest weight of the evidence support Johnson's conviction.  Accordingly, we overrule Johnson's sole assignment of error.

## IV.  Disposition

{¶ 22} Based on the foregoing reasons, the sufficiency of the evidence and the manifest weight of the evidence support Johnson's conviction for receiving stolen property.  Having overruled Johnson's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

NELSON, J., concurs.
BRUNNER, J., concurs in part and dissents in part.

BRUNNER, J., concurring in part and dissenting in part.

{¶ 23} I concur in judgment with the majority, but I respectfully dissent from its reasoning on several key points.  I make these distinctions because model jury instructions are based on case law, and I believe that, were they to be crafted from the majority holding in this decision, the rights of the criminally accused would be affected and as such, diminished.

{¶ 24} In paragraph 14 of the majority decision, the citation to *State v. Skinner*, 10th Dist. No. 08AP-561, 2008-Ohio-6822, ¶ 12, quoting *State v. Kirby*, 10th Dist. No. 06AP-297, 2006-Ohio-5952, ¶ 11, is actually used in *Skinner* to determine the manifest weight of the evidence and not sufficiency of the evidence as is prefaced by ¶ 10 of *Skinner*. I would prefer not to conflate or blur the lines between sufficiency of evidence and manifest weight of the evidence, and by using this citation to *Skinner* in this context, I am concerned we are doing so.

{¶ 25} Also, in paragraph 18 of the majority decision, in discussing manifest weight of the evidence, the majority states, "[w]hen presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387." In light of my concerns about sufficiency versus manifest weight of the evidence, I would add to the quote supported by *Salinas*, the rest of the sentence from which the above quote was extracted: "to permit reasonable minds to find guilt beyond a reasonable doubt." *Salinas* at ¶ 32.

{¶ 26} Second, the particular use of *State v. Ingram*, 10th Dist. No. 11AP-1124, 2012-Ohio-4075 by the majority in paragraph 15 of its decision unnecessarily and improperly expands its application. The relevant sentence from *Ingram* is only this: " 'A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.' " *Id.* at ¶ 22, quoting R.C. 2901.22(B). Our application of *Ingram* should be limited to this quoted language, which is statutory. As *Ingram* is used here, along with *State v. Stanley*, 10th Dist. No. 06AP-323, 2007-Ohio-2786, ¶ 31, the terminology "totality of the circumstances" risks becoming conflated with circumstantial evidence.

{¶ 27} The exact language from ¶ 22 of *Ingram* is this: "Culpable mental states are frequently demonstrated through circumstantial evidence." Left unchecked, the language used in the majority decision extends a descriptive declaration to this maxim in paragraph 15 of the majority: " ' absent an admission' by the defendant, the surrounding facts and circumstances, including the defendant's actions, determine whether a defendant knowingly possessed a controlled substance." As applied to Johnson and as may be applied

in the future in circumstances where a defendant chooses not to identify himself to the police (*see* R.C. 2921.29), or when a defendant chooses not to testify in a criminal proceeding against him, under the Fifth Amendment to the U.S. Constitution and/or Section 10, Article I of the Ohio Constitution, the consequences of exercising this right, would be more severe under the majority's interpretation and application of *Ingram.* The language of the majority decision in paragraph 15 has the effect of increasing the negative consequence for choosing silence, let alone not confessing ("absent an admission"), and that behavior is more likely to be ascribed blame ("including the defendant's actions"), thereby diminishing the freedom to choose not to speak. We should not even dip a toe into this lake of peril when doing so would affect a fundamental right in a criminal proceeding.

{¶ 28} Finally, I would more clearly explain in paragraph 13 of the majority decision that, because the stolen property involved was found by the jury to be a motor vehicle, an enhanced maximum penalty of 18 months imprisonment was imposed for this fourth-degree felony conviction (as opposed to the general penalty of a maximum of 12 months for a general fifth-degree felony for receiving stolen property). R.C. 2913.51(C).

{¶ 29} I therefore respectfully concur with the judgment of the majority in paragraph 22 that "the sufficiency of the evidence and the manifest weight of the evidence support Johnson's conviction for receiving stolen property," but I dissent from the path the majority took to arrive at these conclusions.

_____