[Cite as *State v. Dahir*, 2020-Ohio-467.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-371 |
| v. | : | (C.P.C. No. 18CR-715) |
| Zakaria A. Dahir, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on February 11, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee.

**On brief:** *Brian J. Rigg*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Zakaria A. Dahir, appeals a judgment of the Franklin County Court of Common Pleas entered on May 9, 2019, convicting him following a bench trial of one count of receiving stolen property and sentencing him to serve three years of community control. Because Dahir's conviction was sufficiently supported and not against the manifest weight of the evidence, we overrule both his assignments of error and affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On February 12, 2018, a Franklin County Grand Jury indicted Dahir for one count of receiving stolen property based on the allegation that he possessed a credit card owned by Andrea Black while knowing or having reasonable cause to believe that the card had been obtained through the commission of a theft offense. (Feb. 12, 2018 Indictment.) After pleading "not guilty," Dahir waived his right to a jury and the case proceeded to trial before a judge of the Franklin County Court of Common Pleas. (Feb. 26, 2018 Plea Form; Mar. 20, 2019 Jury Waiver; Tr., filed June 26, 2019.)

{¶ 3} The first witness to testify was a Bexley Police officer who stopped Dahir on November 11, 2017 because Dahir was driving at night with his headlights off. (Tr. at 13-14.) During the stop, the officer searched the vehicle and Dahir's person because the officer smelled marijuana. (Tr. at 15.) The police officer found marijuana residue in the car. (Tr. at 16.) In the course of the search of Dahir's person, the officer found two credit cards that did not have Dahir's name on them. (Tr. at 17.) The officer testified that he could not recall if Dahir had a wallet but thought that, whether Dahir did or not, the cards in question were loose in Dahir's pocket. (Tr. at 17-18.) The officer recounted that Dahir explained his possession of the cards by stating that he worked security at a building in downtown Columbus, had found the cards in a wallet, and was intending to return them the following day at work. (Tr. at 17.) The officer took the cards for safekeeping and entered them into the property room for potential follow-up by detectives. (Tr. at 18, 22.) Dahir was cooperative and was permitted to leave the stop without being charged or arrested. (Tr. at 20.)

{¶ 4} The next witness was a detective sergeant with the Bexley Police Department. (Tr. at 26.) The detective testified that during the course of his investigation, he determined that the card at issue in this case (the card bearing the name, "Andrea Black") was stolen. (Tr. at 29-31.) He was aware Dahir had given an explanation for having the cards but did not further investigate that explanation or attempt to get Dahir's side of the story. (Tr. at 35-38.) He charged Dahir with receiving stolen property. (Tr. at 32.)

{¶ 5} The final witness was Andrea Black. (Tr. at 39.) Black testified that on November 5, 2017, she received a notification from her bank that someone was using her card. (Tr. at 47.) She immediately had the bank deactivate the card and, to her knowledge, no one tried to use the card further after that point. (Tr. at 44-47.) She said no one had permission to use her card and that she had not lent it to anyone. (Tr. at 42.) She stated that she did not know Dahir. *Id.* She explained that it appeared her card had been stolen along with her wallet and purse from her vehicle some time the day before, on November 4. (Tr. at 42-45.) She testified that she had reported the theft to the Columbus Police Department. (Tr. at 40.)

{¶ 6} At the close of the plaintiff-appellee's, State of Ohio's, case, Dahir through counsel moved for dismissal under Crim.R. 29. (Tr. at 48-51.) The trial court denied

Dahir's motion. *Id.* Thereafter, without presenting any witnesses or evidence, the defense rested. (Tr. at 51.) After listening to closing arguments, the trial court called a 20-minute recess. (Tr. at 56.) The trial court then reconvened and delivered a decision and verdict from the bench as follows:

> I have reviewed the trial testimony offered in this case as well as the sole exhibit, Exhibit E, the credit card. It does appear to be in the name of an Andrea Black. She identified this card as being the one that was stolen out of her car and reported stolen to Columbus Police on November 5 of 2017.
>
> It was Ms. Black's testimony that she received a notification from her financial institution that there were unauthorized or unusual transactions being placed on it, and it was at that time she realized the card had been stolen, and she filed a report with the Columbus Police Department.
>
> The Court also heard the testimony of Officer Fleming, the Bexley police officer who conducted the stop of the defendant. He testified that he smelled the odor of burnt marijuana emanating from the car and that based on that, he removed the operator, who he identified as the defendant, had found more evidence of marijuana usage in the car and, therefore, conducted a search of the defendant based on probable cause.
>
> At that time, Officer Fleming testified he found two credit cards loose-leaf in the defendant's pockets on his person.
>
> We also heard from Sergeant Holdren who testified about the follow-up investigation that was done in light of that report.
>
> The State of Ohio must prove in order to prove a charge of receiving stolen property that the defendant retained, received, or disposed of in this case a credit card with the knowledge or having reasonable cause to believe that that property was obtained through a theft offense.
>
> Courts in Ohio have defined reasonable cause to believe as being similar to knowledge in that the knowledge must be sufficient to show that the offender knew that the property at issue was likely to be of a certain nature or that there were certain circumstances surrounding the property as to put them on notice.
>
> The Tenth District Court of Appeals has held that in regards to having reasonable cause to believe that the property is stolen, one has reasonable cause to believe that it was obtained

through a theft offense when after putting oneself in the position of the defendant with his knowledge, lack of knowledge, and under the circumstances and conditions that surrounded him at the time, the acts and words and all the surrounding circumstances would have caused a person of ordinary prudence and care to believe that the property had been obtained through the commission of a theft offense.

That comes from *State v. Kirby*, 2006-Ohio-5952. That's a Tenth District case interpreting several older cases from the '80s and '90s.

The circumstances of this case indicate that the defendant did know or had reasonable cause to believe that the card was stolen in considering the recency of the theft report; the fact that the card was used without -- there were unauthorized uses of the card after it had been stolen; the fact that the card was found loose-leaf in his pockets in the evening when he was not working security; he was not working at his job or in his employment; he was driving down the street when these cards were recovered. These all indicate that the defendant should have known that the card was stolen.

It is not in the defendant's name. It belongs to someone who has absolutely no idea or knowledge of who the defendant is. Together with all those facts and circumstances, it indicates that the defendant knew and the Court finds that the defendant knew or had reasonable cause to believe that the card was obtained through the commission of a theft offense.

Furthermore, there was testimony from Officer Fleming that there was a second credit card belonging to a second individual also in the defendant's pockets. Although the Court did not allow testimony about that card because it was related to an unindicted issue or a victim, the Court has considered that pursuant to Evidence Rule 404(B), showing the defendant's knowledge that these cards were stolen.

I do think that is a proper use of that information. Even though we didn't get the name of the individual involved in that second card, the fact that the defendant is carrying around two cards that are in other individual's names who did not belong to him in his pants pocket at nighttime while he's not at work, the Court will consider that for knowledge that the defendant knew these credit cards or had reasonable cause to believe these credit cards were stolen.

The Court finds that that is a proper limited use of that information pursuant to Evidence Rule 404(B), but even without that information, the Court finds that there is sufficient factual information and circumstances in the circumstances surrounding the investigation to indicate that the defendant is guilty of the offense of receiving stolen property as indicted.

Therefore, the Court will find that the defendant -- the State of Ohio has met their burden of proof. They have proven beyond a reasonable doubt that the defendant did commit the offense as charged in Count 1.

You know, just to comment on the defendant's explanation, you know, his explanation is not completely innocent. If the defendant had been working at a security agency in a building, there would have been a protocol regarding the recovery of lost items. There would have been a process that should have been followed.

And so even if we believe the offender's explanation that he made to Officer Fleming that night, the fact that the cards weren't turned in, the cards weren't reported to management, the fact that they were taken and in his possession when he's not working, when he's not on shift, when he's not on the grounds where he claims to have worked, just because the defendant made an innocent statement doesn't mean that that is worthy of belief.

The circumstances, when considering all of that, in putting myself in the defendant's position for what he knew or didn't know and in consideration of all the circumstances, the Court finds that the State of Ohio has proven the charge beyond a reasonable doubt.

(Tr. at 57-61.)

{¶ 7} On May 9, 2019, the trial court convened a sentencing hearing and ordered Dahir to serve three years of community control. (Sent. Tr. at 8-9; May 9, 2019 Jgmt. Entry at 1.) Dahir now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 8} Dahir presents two assignments of error for our review:

1. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S R. 29 MOTION FOR ACQUITTAL.

> ### 2. THE VERDICT OF RECEIVING STOLEN PROPERTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

Because resolution of these assignments of error involves some of the same analysis, we discuss them together.

## III. DISCUSSION

{¶ 9} "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37, citing *State v. Carter*, 72 Ohio St.3d 545, 553 (1995); *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is:

> "[A] term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11, quoting *Thompkins* at 386; *Black's Law Dictionary* 1433 (6th Ed.1990). "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Monroe*, 105 Ohio St. 3d 384, 2005-Ohio-2282, ¶ 47, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991) paragraph two of the syllabus.

{¶ 10} The Supreme Court of Ohio has "carefully distinguished the terms 'sufficiency' and 'weight' * * *, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.' " *Eastley* at ¶ 10, quoting *Thompkins* at 380, paragraph two of the syllabus.

> Weight of the evidence concerns "the inclination *of the greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. * * * . Weight is not a question of mathematics, but depends on its *effect in inducing belief*."

(Emphasis sic.) *Eastley* at ¶ 12, quoting *Thompkins* at 387; *Black's* at 1594. In manifest weight analysis, "the appellate court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony." *Thompkins* at 388, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all

reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 11} The Ohio Revised Code defines the offense of receiving stolen property as follows:

> No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.

R.C. 2913.51(A). This case hinges on what the evidence shows Dahir knew or had reasonable cause to believe. There are several different articulations of how the trial judge, as factfinder in the stead of a jury, was to make that analysis.

{¶ 12} This Court has often remarked that "one has reasonable cause to believe property was obtained through a theft offense when, after putting oneself in the position of this defendant, with his knowledge, lack of knowledge, and under the circumstances and conditions that surrounded him at the time, the acts and words and all the surrounding circumstances would have caused a person of ordinary prudence and care to believe that the property had been obtained through the commission of a theft offense." (Internal quotation marks omitted.) *State v. Collins*, 10th Dist. No. 11AP-130, 2012-Ohio-372, ¶ 12, quoting *State v. Skinner*, 10th Dist. No. 08AP-561, 2008-Ohio-6822, ¶ 12; *State v. Kirby*, 10th Dist. No. 06AP-297, 2006-Ohio-5952, ¶ 11. We have also stated that there are a number of factors, "to consider when determining whether reasonable minds could conclude whether a defendant knew or should have known property has been stolen: (a) the defendant's unexplained possession of the merchandise, (b) the nature of the merchandise, (c) the frequency with which such merchandise is stolen, (d) the nature of the defendant's commercial activities, and (e) the relatively limited time between the thefts and the recovery of the merchandise." (Citations and internal quotation marks omitted.) *Collins* at ¶ 14; *see also State v. Caldwell*, 10th Dist. No. 99AP-1107, 2000 WL 1707841, 2000 Ohio App. LEXIS 5294, *18 (Nov. 16, 2000). In addition, the United States Supreme Court, the Supreme Court of Ohio, and this Court have all agreed that, "possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may

reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen." *Barnes v. United States*, 412 U.S. 837, 839-40, 848 (1973); *accord State v. Arthur*, 42 Ohio St.2d 67, 68-69 (1975); *Caldwell* at *17.

{¶ 13} In this case, on November 11, 2017, a police officer conducting a probable cause search for marijuana during a traffic stop discovered Dahir had a credit card in the name of a stranger in his pocket. (Tr. at 15-17.) Further investigation revealed that that same card had been stolen and illicitly used less than a week before the stop. (Tr. at 29-31, 40-47.) Dahir explained to the officer that he had found the card in a wallet in the course of his duties as a security guard at a building in downtown Columbus and planned to return the card the next day. (Tr. at 17.) However, Dahir presented nothing at trial to substantiate that explanation which is facially questionable and was questioned by the trial judge as factfinder. For example, it makes little sense that a professional security officer, on finding a wallet, would remove the credit cards from it and carry them around on his person while off duty rather than, for example, placing the wallet and its contents in a designated location for lost property or at a secure storage on the building site. To put it another way, Dahir had possession of recently stolen property of a kind that is frequently stolen and which, by nature of bearing the cardholder's name, is facially identifiable as lost or stolen. Yet, his explanation for that circumstance was not satisfactory to the factfinder. (Tr. at 60-61.)

{¶ 14} In applying this analysis to Dahir's first assignment of error, a review of the trial court's denial of his motion for directed verdict, "viewing the evidence in a light most favorable to the prosecution," we must conclude that a "rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Monroe*, 2005-Ohio-2282, at ¶ 47. Thus, we find no error and overrule Dahir's first assignment of error that the trial court erred in not granting his motion for directed verdict.

{¶ 15} We turn to Dahir's second assignment of error, that the conviction was against the manifest weight of the evidence. When we consider the trial court's conclusions from the evidence, including its discussion of Dahir's credibility, and when we draw such inferences as a juror or factfinder might, we cannot go so far as to say that the factfinder here " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins*, 78 Ohio St.3d at 387,

quoting *Martin*, 20 Ohio App.3d at 175. Thus, we find that Dahir's conviction was not against the manifest weight of the evidence and we overrule Dahir's second assignment of error.

**IV. CONCLUSION**

{¶ 16} The trial court therefore did not err in overruling Dahir's motion for acquittal under Crim.R. 29 or in finding him guilty, and Dahir's conviction was not against the manifest weight of the evidence. We overrule both of Dahir's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and NELSON, JJ., concur.