[Cite as *State v. Wear*, 2021-Ohio-3384.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No.  WD-20-042

      Appellee                             Trial Court No.  2019CR0268

v.

Tony Wear                                        **DECISION AND JUDGMENT**

      Appellant                            Decided:  September 24, 2021

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Emil G. Gravelle, III, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This case is before the court on appeal by appellant, Tony Wear, from the

May 22, 2020 judgment of the Wood County Court of Common Pleas.  For the reasons

that follow, we affirm, in part, and reverse, in part.

{¶ 2} Appellant sets forth three assignments of error:

A. The trial court erred in denying Appellant Tony Wear's motion to suppress and not suppressing all evidence gathered after the arrest.

B. Appellant's Conviction for Receiving Stolen Property was Based on Insufficient Evidence.

C. Appellant's Conviction for Receiving Stolen Property was Against the Manifest Weight of Evidence.

**Background**

{¶ 3} On June 6, 2019, appellant was a passenger in a pickup truck being driven northbound on Interstate 75 ("I-75") in Wood County, Ohio, when Trooper Garrett Lawson of the Ohio State Highway Patrol ("the patrol"), observed the pickup. As the pickup passed Trooper Lawson, who was stationary in a crossover, the trooper checked the pickup's speed and noted it was traveling at 60 m.p.h., when the speed limit was 70 m.p.h. The trooper pulled out, followed the pickup and attempted to initiate a traffic stop for impeding traffic and slow speed.

{¶ 4} The pickup did not stop, it accelerated, and a chase ensued. Ultimately, the pickup was stopped and appellant and the driver were arrested. Appellant had two debit cards, which were not in his name, as well as syringes and suspected methamphetamine in the pockets of his pants. The pickup was searched and items such as loaded firearms,

2.

magazines with bullets, bundles of money, digital scales and rolling papers were discovered.

{¶ 5} On July 11, 2019, appellant was indicted on numerous charges, including two counts of receiving stolen property, each with a one-year firearm specification, in violation of R.C. 2913.51(A) and (C), each count a fifth-degree felony.

{¶ 6} On July 22, 2019, appellant was arraigned and entered a plea of not guilty.

{¶ 7} On October 9, 2019, appellant filed a motion to suppress, arguing no traffic violation occurred, so any evidence was illegally seized. A suppression hearing was held on January 9, 2020. Post-hearing memoranda were filed.

{¶ 8} On February 24, 2020, the trial court issued a decision and order denying the motion to suppress.

{¶ 9} On March 11, 2020, a jury trial commenced, and on March 13, 2020, appellant was found guilty of, inter alia, two counts of receiving stolen property.

{¶ 10} On May 4, 2020, appellant was sentenced to, inter alia, one year in prison on each count of receiving stolen property and one year in prison for each firearm specification. The trial court ordered the sentences on the two counts of receiving stolen property to be served concurrently to each other but consecutive to appellant's sentence for other offenses. The court further ordered the sentences for the firearm specifications to be served concurrently to each other but consecutive to appellant's sentence for other offenses. Appellant was sentenced to a total of nine years in prison. Appellant appealed.

3.

**Motion to Suppress**

{¶ 11} In appellant's motion, he sought to have the trial court suppress the evidence and statements obtained as a result of the initial unlawful traffic stop. Appellant argued when the pickup was in the left lane, after passing a semi-truck, it did not impede traffic as other vehicles were able to legally pass the pickup on the right-hand side. Appellant asserted since the pickup was not impeding traffic, the trooper lacked reasonable suspicion to initiate the traffic stop.

**Suppression Hearing**

{¶ 12} Trooper Lawson was the only witness called to testify at the motion to suppress hearing. In addition, the trooper's patrol car video ("dash cam") was played, which showed the trooper following the pickup prior to attempting to initiate the traffic stop, the chase and the stop.

{¶ 13} Trooper Lawson testified to the following. He started with the patrol, in the academy, in May of 2012, and was a road trooper for five years. He became a field training officer and took Advanced Criminal Interdiction Roadside Training and became a drug recognition expert. In August 2018, he moved into the criminal interdiction team.

{¶ 14} The trooper described how he looks for three phases while on the highway: Phase 1, a vehicle approaches; Phase 2, what the person and vehicle do when in front of him; Phase 3, what the person and vehicle continue to do when they pass by him. The trooper picks out what are normal and not normal driving behaviors, which he learned

4.

from watching thousands of vehicles. He said the biggest indicator of criminal activity is a substantial decrease in speed when the motorist sees him, passes him and continues by without ever regaining speed. He said it is not normal for the motorist to keep driving at a slow speed. The trooper also stated it is not normal for motorists to go out of their way not to acknowledge his presence.

{¶ 15} On the morning of June 6, 2019, the trooper was working, and he was in uniform and in a marked cruiser. Around 11:00 a.m., he was on I-75 when he noticed the pickup in which appellant was a passenger was traveling at well below the posted speed limit, in the middle lane. As the pickup passed, the trooper noted the driver was sitting up straight in a rigid position with his hood pulled over his face, attempting to conceal his identity. The passenger, appellant, was slouched low in his seat.

{¶ 16} After the trooper checked the pickup's speed, he pulled his cruiser into traffic and started to follow the pickup which "was a while up the way." While the trooper ran the pickup's registration, he moved the cruiser to the right lane at which point the pickup moved to the left lane. The pickup continued in the left lane and passed a semi-truck which was in the center lane. The trooper remained in the right lane and paced the pickup. Trooper Lawson saw one vehicle proceed to the middle lane and pass the pickup, "[a]s anybody would be irritated with somebody traveling between 60, 63 in a 70-mile zone" in the left lane. At that point, the trooper noticed traffic was starting to

5.

back up behind the pickup due to the slow speed in the left lane, so he moved the cruiser to the center lane and activated his lights in an attempt to initiate a traffic stop.

{¶ 17} The pickup did not stop, and fled at a high rate of speed on I-75. The trooper pursued the pickup and saw that a package was thrown out of the pickup's right window. The pickup was eventually stopped; appellant and the driver were taken into custody. The pickup was searched and firearms were found. The package that was thrown out of the pickup was recovered, and it was determined to be marijuana.

{¶ 18} The dash cam video showed the trooper following the pickup, attempting to initiate the traffic stop, chasing the pickup and stopping the pickup. What was displayed on the dash cam video was consistent with the trooper's testimony, although not everything to which the trooper testified was on the dash cam video due to the camera's position in the cruiser.

### Trial Court's Decision and Order

{¶ 19} In its February 24, 2020 decision and order, the trial court denied the motion to suppress. The court disagreed with appellant's position that the pickup was not impeding traffic because vehicles were able to legally pass the pickup on the right-hand side. The court set forth "[t]he fact that vehicles are permitted to pass in the right lane does not eliminate the fact that [the pickup] impeded traffic by traveling below the prevailing rate of speed[,] and should have moved to the right-hand lane."

6.

{¶ 20} The court found Trooper Lawson's testimony was credible and his testimony was supported by the dash cam footage, although given the position of the dash cam, the video did not capture traffic backing up behind the pickup. The court noted the trooper observed the actions of the driver of the pickup and appellant, and these observations established reasonable and articulable suspicion that traffic violations for both R.C. 4511.22(A) and R.C. 4511.25(B)(1) had occurred. The court therefore found the traffic stop was lawful.

**First Assignment of Error**

{¶ 21} Appellant argues the trial court erred in denying his motion to suppress. He notes that a police officer must have reasonable, articulable suspicion of criminal activity in order to justify an investigative stop. Appellant contends slow speed, generally, is not enough to justify a traffic stop. Appellant submits the issue is whether the pickup was seriously impeding traffic or going unreasonably slow to create a traffic risk. And, appellant insists the totality of the circumstances analysis is limited to the potential criminal activity that the leads to the violation for impeding traffic.

{¶ 22} Appellant asserts "Trooper Lawson assumed drivers were irritated behind the * * * pickup and because one vehicle passed the * * * pickup[,] Trooper Lawson found that the * * * pickup was impeding traffic." Appellant maintains the pickup was not seriously impeding traffic nor was it traveling unreasonably slow to create risk, because the pickup was passing a semi-truck and within seconds, another vehicle moved

7.

into the middle lane, which prevented the pickup from safely changing lanes. Thus, appellant claims the reason for the traffic stop was unjustified.

{¶ 23} The state counters the pickup's slow speed in the left-lane coupled with the fact that traffic was being impeded resulted in a traffic violation, so the traffic stop was proper. The state also noted a police officer is required to have reasonable suspicion to lawfully effectuate a traffic stop.

<b>Traffic Stop</b>

<b>Search and Seizure Law</b>

{¶ 24} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, guarantee a person's right to be free from unreasonable searches and seizures. *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). The temporary detention of a motorist during a traffic stop is a seizure. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

{¶ 25} As we previously noted in *State v. Bui*, 6th Dist. Lucas No. L-19-1028, 2021-Ohio-362, ¶ 13:

> There has been continuing confusion over what standard applies to a traffic
>
> stop: probable cause or reasonable articulable suspicion. *See State v. Mays*,
>
> 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23 ("[W]e have
>
> not held that probable cause is required [for a traffic stop]. * * * A traffic
>
> stop is constitutionally valid if the police officer has a reasonable and

articulable suspicion that a motorist has violated the law."). *But see State v. Turner*, 2020-Ohio-6773, ¶ 2 ("[W]hen an officer believes a traffic law has been violated, the focus of the inquiry is whether the officer had 'probable cause to believe that a traffic violation has occurred.'").

{¶ 26} However, following the release of *Bui*, the Supreme Court of Ohio dispelled any uncertainty in *State v. Tidwell*, 2021-Ohio-2072, ¶ 19 ("[A] police officer * * * may * * * make an investigatory stop, including a traffic stop, of a person if the officer has reasonable suspicion to believe that the person is or is about to be engaged in criminal activity."). The *Tidwell* court set forth that reasonable suspicion

"is dependent upon both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). "Both factors-quantity and quality-are considered in the 'totality of the circumstances-the whole picture,' * * *, that must be taken into account when evaluating whether there is reasonable suspicion." *Id.*, quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Police officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273, 122

S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting *Cortez* at 418, 101 S.Ct. 690.

*Id.* at ¶ 20.

## Standard on Appeal

{¶ 27} Appellate review of a Crim.R. 12(C)(3) motion to suppress presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When the trial court decides a motion to suppress, it assumes the role of trier of fact and is in the best position to resolve questions of fact and to assess witness credibility. *Id.* At a motion to suppress, the state bears the burden of demonstrating the validity of a traffic stop. *State v. Foster*, 11th Dist. Lake No.2003-L-039, 2004-Ohio-1438, ¶ 6. However, "the rules of evidence normally applicable in criminal trials do not operate with full force and effect in hearings before the judge to determine the admissibility of evidence." *U.S. v. Matlock*, 415 U.S. 164, 172-173, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Therefore, when ruling on a motion to suppress, the trial court may rely on hearsay and other evidence which would not be admissible at trial. *Id.*

{¶ 28} A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Burnside* at ¶ 8. An appellate court must then independently decide as a matter of law whether the trial court's conclusions satisfy the appropriate legal standard. *Id.*

10.

**R.C. 4511.22 and R.C. 4511.25**

{¶ 29} R.C. 4511.22(A) provides "[n]o person shall * * * operate a vehicle * * * at such an unreasonably slow speed as to impede or block the normal and reasonable movement of traffic, except when stopping or reduced speed is necessary for safe operation or to comply with law."

{¶ 30} R.C. 4511.25(B) states:

(1) Upon all roadways any vehicle * * * proceeding at less than the prevailing and lawful speed of traffic at the time and place and under the conditions then existing shall be driven in the right-hand lane then available for traffic, and far enough to the right to allow passing by faster vehicles if such passing is safe and reasonable, except under any of the following circumstances:

(a) When overtaking and passing another vehicle * * * proceeding in the same direction[.]

* * *

(2) Nothing in division (B)(1) of this section requires a driver of a slower vehicle to compromise the driver's safety to allow overtaking by a faster vehicle.

{¶ 31} In *State v. Gray*, 6th Dist. Wood No. WD-18-067, 2019-Ohio-2662, ¶ 17, we noted that "both R.C. 4511.25(B) and R.C. 4511.22(A), supra, aim to prevent traffic

11.

impediments and unsafe conditions due to the unreasonably slow speed of drivers proceeding in the far-left lane."

## Analysis

{¶ 32} Upon review, we conclude the trial court's finding that the traffic stop was lawful is supported by competent, credible evidence in the record. In addition, Trooper Lawson testified to specific and articulable facts which gave rise to a reasonable suspicion that the driver of the pickup had committed traffic offenses by traveling below the speed limit in the left lane and impeding traffic. The dash cam video confirms those facts which were in the camera's view. Based upon the totality of circumstances, we conclude the trooper had reasonable suspicion to initiate the traffic stop of the pickup, thus the traffic stop was lawful. Accordingly, the trial court did not err in denying appellant's motion to suppress, and appellant's first assignment of error is not well-taken.

## Second and Third Assignments of Error

{¶ 33} Appellant asserts his convictions for two counts of receiving stolen property were based on insufficient evidence and were against the manifest weight of the evidence. Appellant contends the state never introduced any evidence or testimony that the police investigated the two debit cards, nor did the state introduce any evidence or testimony that the cards were reported stolen or were part of any theft offense. Appellant argues nothing else in appellant's possession or the pickup driver's possession was determined to be stolen. Appellant maintains the state failed to present sufficient

12.

evidence to infer from his possession of the debit cards, that he knew or had reasonable cause to believe the cards were stolen.

{¶ 34} The state contends that when appellant was interviewed "concerning why he had credit cards in his pockets that didn't have his name on them and where those cards came from," he said "maybe somebody put them in his pocket or maybe they were flying around inside the truck." The state observes "[t]he jury found that explanation to be a bit far-fetched." The state further argues appellant "had no idea who either [of the individuals] were," and neither of those individuals were in the pickup. The state submits "[i]n light of that, a jury is not compelled to believe an implausible story posited by a defendant. [Appellant's] yarn is no different." The state asserts this court and others have found sufficient evidence and manifest weight of the evidence exist in receiving stolen property cases when "credit cards miraculously appear in a defendant's pocket that logic dictates were stolen, since the defendant had no idea who the person is whose name is on the credit card." The state cites to numerous cases in support of this assertion.

{¶ 35} In reply, appellant observes, with respect to the cases cited by the state when a defendant possessed a credit card which was not in defendant's name, either the police confirmed the credit cards were stolen or the victim of the theft testified. Appellant also notes, regarding the cases cited by the state where credit cards in vehicles were assumed stolen, either the defendant used the credit cards or the victim testified.

13.

## Sufficiency of the Evidence

{¶ 36} Sufficiency of the evidence is a legal standard which tests whether the evidence introduced at trial is legally adequate to support a jury verdict as to all elements of the crime. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The proper analysis is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

## Manifest Weight of the Evidence

{¶ 37} We review a claim that a verdict is against the manifest weight of the evidence by weighing the evidence and all reasonable inferences, considering the credibility of the witnesses, and determining whether the jury lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387. "[A] reviewing court asks whose evidence is more persuasive-the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. We do not consider the evidence in a light most favorable to the state, rather "we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v.*

*Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, quoting *Thompkins* at 387.

### Receiving Stolen Property

{¶ 38} R.C. 2913.51 provides in relevant part:

(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.

* * *

(C) Whoever violates this section is guilty of receiving stolen property. * * * If the value of the property involved is one thousand dollars or more and is less than seven thousand five hundred dollars, if the property involved is any of the property listed in section 2913.71 of the Revised Code, [then] receiving stolen property is a felony of the fifth degree.

{¶ 39} R.C. 2913.71(A) states in pertinent part:

Regardless of the value of the property involved and regardless of whether the offender previously has been convicted of a theft offense, a violation of section 2913.02 or 2913.51 of the Revised Code is a felony of the fifth degree if the property involved is any of the following * * * [a] credit card[.]

**{¶ 40}** R.C. 2913.01(U) provides:

"Credit card" includes * * * a card, code, device, or other means of access to a customer's account for the purpose of obtaining money * * * on credit, or for initiating an electronic fund transfer at a point-of-sale terminal, an automated teller machine, or a cash dispensing machine.

**{¶ 41}** "Property of another" is defined as including "property in which any person other than the actor has an interest which the actor is not privileged to infringe." Section 223.0(7), Theft and Related Offenses, Definitions, Model Penal Code, American Law Institute (1985).

**{¶ 42}** R.C. 2901.22 defines culpable mental states and provides in relevant part:

* * *

(B) A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 43} "'[H]aving reasonable cause to believe' is essentially 'a refinement of the knowledge state of culpability' * * * and * * * '[i]t is often proven largely through circumstantial evidence and inferences.'" (Internal citations omitted.) *State v. Rich*, 2d Dist. Montgomery No. 27356, 2018-Ohio-1225, ¶ 33.

{¶ 44} In a prosecution for receiving stolen property, the state has to prove more than mere physical possession of the property in order for the jury to find appellant guilty. *State v. Brown*, 6th Dist. Lucas No. L-97-1332, 1998 WL 614560, *2 (Nov. 19, 1999). However, the jury may infer guilty knowledge when a defendant's "possession of recently stolen property either goes unexplained or is not satisfactorily explained in the context of the surrounding circumstances, as shown by the evidence. *State v. Arthur*, 42 Ohio St.2d 67, 68-69, 325 N.E.2d 888 (1975)." *State v. Emery*, 6th Dist. Lucas No. L-11-1228, 2013-Ohio-208, ¶ 18.

**Analysis**

{¶ 45} At trial, the state presented Trooper Lawson's testimony which established that appellant had one orange Visa debit card and one black Visa debit card in his pockets when he was arrested. The name on the orange card was Johnathan Marrison and the name on the black card was William Stackhouse; neither cardholder name matched appellant's name or the pickup driver's name. The trooper testified that appellant said the cards did not belong to him.

17.

{¶ 46} In addition, an audio tape of appellant talking with Trooper Ryan Stewart and Lieutenant Scott Wyckhouse was introduced as evidence at trial. Appellant was asked "whose credit cards are those - Stackhouse?" Appellant mumbled, "I don't know * * * in the truck * * *." An officer said "it was in your [appellant's] pocket," and appellant responded that "ain't mine" things were "flying around" in the truck and he "might have grabbed 'em."

{¶ 47} Upon review, appellant was charged with receiving stolen property. So, the state had to prove that appellant received or retained debit cards of Johnathan Marrison and William Stackhouse knowing or having reasonable cause to believe that the debit cards had been obtained through commission of a theft.

{¶ 48} Viewing the evidence in a light most favorable to the state, we find the state failed to establish that appellant "receive[d], retain[ed] * * * property of another." The state introduced no evidence about Johnathan Marrison or William Stackhouse to show who they were, and that they were actual people, not just pretend names on the debit cards.

{¶ 49} We further find that the state did not establish that appellant knew or had "reasonable cause to believe that the [two debit cards had] been obtained through commission of a theft offense." The state presented no evidence as to how or when appellant came into possession of the debit cards, other than the account offered by appellant, and the state offered no evidence that the debit cards were, in fact, stolen.

18.

{¶ 50} While the state cited to cases, in its brief, where "credit cards miraculously appear in a defendant's pocket * * * and the defendant has no idea who the person is whose name is on the credit card," in all of those cases, there was trial testimony by police, the victim or a witness verifying that the credit card was stolen. However, in the present case, no testimony was offered at appellant's trial verifying the debit cards were stolen. *Compare State v. Neal*, 6th Dist. Lucas No. 80-286, 1981 WL 5620, *1 (June 5, 1981) (Store employee, victim, security guard and police officer testified.); *State v. Dahir*, 10th Dist. Franklin No. 19AP-371, 2020-Ohio-467, ¶ 2-5 (Officer, detective and victim testified.); *State v. Quick*, 5th Dist. Licking No. 2007CA00075, 2008-Ohio-2687, ¶ 1-3 (Victim testified.); *State v. Hairston*, 10th Dist. Franklin No. 01AP-299, 2001 WL 1242318, *1 (Oct.18, 2001) (Victim and two officers testified.); and *State v. Fair*, 8th Dist. Cuyahoga No. 74149, 1999 WL 328623, *1-2 (May 20, 1999) (Officer testified Sunoco credit card with victim's name found in Fair's pocket. 800 number on the back of the card was called. Sunoco representative confirmed card was reported lost or stolen. Victim testified.).

{¶ 51} The state also cited cases in its brief where credit cards were "merely * * * found in the car" in which a defendant was traveling. In those cases, evidence was offered that the defendant used or tried to use the card or the victim testified that the card was stolen. Yet, in the present case, there was no evidence or testimony at appellant's trial that appellant tried to use the debit cards or that the debit cards were stolen.

19.

*Compare State v. Purdue*, 6th Dist. Wood No. WD-88-4, 1988 WL 91339, *1 (Sept. 2, 1988) (Two wallets found under front seat of car. Victim testified regarding her wallet and what it contained.); *State v. Cejer*, 8th Dist. Cuyahoga No. 59889, 1992 WL 55455, *1 (March 19, 1992) (Credit card used. Parties stipulated credit cards were stolen.); *State v. Armstrong*, 9th Dist. Summit No. 14585, 1991 WL 2011, *2-3 (Jan. 9, 1991) (Car and purse reported stolen. Victim testified.); and *State v. Austin*, 9th Dist. Summit No. 11298, 1984 WL 4764, *1 (Feb. 16, 1984) (Victim's wallet with credit cards lost or stolen. Austin tried to use victim's card at store; clerk alerted card was stolen, Austin arrested. Victim testified.).

{¶ 52} Since the state had the burden to prove every element of the crimes beyond a reasonable doubt, and failed to prove more than mere physical possession of the debit cards by appellant, we find the evidence introduced at trial was inadequate to support the jury's verdict finding appellant guilty of two counts of receiving stolen property. Thus, there is insufficient evidence in the record as to all elements of the offenses, and appellant's convictions for receiving stolen property, along with the attendant firearm specifications, must be reversed and vacated.

{¶ 53} Having found appellant's receiving stolen property convictions were not supported by sufficient evidence as a matter of law, appellant's assigned error that his convictions for receiving stolen property are against the manifest weight of the evidence

20.

is moot. See App.R. 12(A)(1)(c). Accordingly, appellant's second and third assignments of error are well-taken.

{¶ 54} On consideration, the judgment of the Wood County Court of Common Pleas is affirmed, in part, reversed, in part. Appellant's convictions for receiving stolen property and the attendant firearm specifications are vacated due to a lack of sufficiency of the evidence. This matter is remanded to the trial court to conduct further proceedings consistent with law and with this opinion. The costs of this appeal are assessed to appellee pursuant to App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J. _____
                                                                JUDGE
Christine E. Mayle, J. _____

Myron C. Duhart, J. _____
CONCUR.                                              JUDGE

_____
                                                                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.