[Cite as *State v. Carter*, 2024-Ohio-444.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 23AP-136 |
| v. | : | (C.P.C. No. 20CR-3988) |
| Duane R. Carter, Sr., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on February 8, 2024

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Kimberly M. Bond*, for appellee.

**On brief:** *Wolfe Law Group*, *LLC*, and *Stephen T. Wolfe*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Duane R. Carter, Sr., appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding him guilty of criminal trespassing, in violation of R.C. 2911.21, a fourth-degree misdemeanor. On February 7, 2023, the trial court issued a judgment entry which reflected the verdict of the jury and imposed a jail sentence of two days and ordered that Carter pay restitution to the victim, with the case being immediately terminated for time served. (Feb. 7, 2023 Jgmt. Entry.) For the reasons that follow, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2}   On August 26, 2020, Carter was indicted for breaking and entering in violation of R.C. 2911.13, a fifth-degree felony.  On January 30, 2023, the case proceeded to a jury trial.  At trial, the following evidence was adduced.

{¶ 3}   David Pigg owns the property located at 1039 Olmstead Ave. in Columbus, Ohio.  He bought it in the mid-1980's, around 1984 or 1985, and for a few years he operated a business marketing sheet steel from that location.  Mr. Pigg conceded that as time went on, the property had not been well maintained and he had received various notices of code violations for unmowed grass.  But he always addressed those violations as soon as he could.  He also kept current with property tax payments.  Although he no longer used the property as a business, he kept a variety of tools and equipment in the building, and he used the building as a hobby shop.  There were also two cars in the building, including a 1966 Mustang.

{¶ 4}   Mr. Pigg testified that on the evening of August 11, 2020, he got a call at home from an acquaintance that people were inside of the building at the property.  Mr. Pigg immediately called the police to inform them that someone had broken into his building, and they were still on the scene.  He then went to the property to meet the police there.  Mr. Pigg testified that he had been at the property about three weeks prior to August 11, 2020, and he had been inside the building a couple months before August 11, 2020.  Mr. Pigg testified that he had not given Carter permission to be on the property or move or remove any of his personal property.

{¶ 5}   Officer Melvin Romans of the Columbus Police Department testified that on the evening of August 11, 2020, police were dispatched to the property located at 1039 Olmstead Ave. with a report of a burglary in progress.  Officer Romans was wearing a body worn camera ("BWC") and he activated it for this run.  Three other officers were with Officer Romans:  Officer Marc Rees, Officer Adam Hardwick, and Officer Ben Mackley.  All of the officers wore BWC's.  Upon arriving at the property, the officers encountered Carter and several other individuals sitting and having dinner.

{¶ 6}   At trial, the recorded video from the officers' BWCs were played and were subsequently admitted into evidence.  The footage from the video showed that Carter initially told the responding officers that the City owned the property, and that he had

permission from the City, through a land bank contract, to fix up the property. (State's Ex. B1, Officer Roman's BWC footage at 2:27-2:30; 3:18.) Carter then told the officers that he was the owner of the property, stating that he obtained the property on a maintenance lien or land bank contract. (*Id.* at 3:46-4:01; 12:57-13:04; State's Ex. B2, Officer Rees' BWC footage at 5:50-6:01; 8:29; State's Ex. B3, Officer Hardwick's BWC footage at 1:26; 1:40.) Carter also told the officers that he had put $3,000 into fixing up the property. (State's Ex. B1 at 4:34-4:43; State's Ex. B3 at 2:13-2:19.)

{¶ 7} Officer Mackley testified that as Carter was speaking with the officers, Officer Mackley was opening the Franklin County Auditor's website to determine who owned the property. The Auditor's website showed that Mr. Pigg owned the property.

{¶ 8} At trial, Carter provided testimony on his own behalf. He testified that he had been at the property, on and off, for about five weeks prior to August 11, 2020. He also testified regarding, and presented receipts for, the tools and equipment that he purchased to refurbish the property. Carter denied taking Mr. Pigg's tools and equipment and testified that the property was an eyesore and that he wanted to restore the property.

{¶ 9} Carter's friend, I.H., also provided testimony at trial. She testified she was on the property on August 11, 2020, and had been helping Carter clean up the property that day. She testified that she knew Carter was not buying the property. She further testified that the group did not get in touch with Mr. Pigg before they entered the building. I.H. testified that Carter wanted to improve the property and then "make a deal" with the owner to buy it.

{¶ 10} At the conclusion of the trial on February 3, 2020, the jury found Carter guilty of the lesser-included offense to Count 1 of the indictment, to wit: criminal trespassing, in violation of R.C. 2911.21, a fourth-degree misdemeanor. On the same day, Carter was sentenced to two days at the Franklin County Correction Center and ordered to pay restitution to the victim, with the case being immediately terminated for time served. (Feb. 7, 2023 Jgmt. Entry.)

{¶ 11} This timely appeal followed.

## II. Assignments of Error

{¶ 12} Appellant asserts the following four assignments of error for our review:

[I.] The trial court erred when it declined to give an instruction on adverse possession.

[II.] The trial court committed plain error when it declined to give an instruction on abandonment.

[III.] The evidence presented at trial was insufficient to support the convictions.

[IV.] The jury's verdicts were against the manifest weight of the evidence.

## III. Discussion

### A. Assignment of Error One

{¶ 13} In his first assignment of error, Carter asserts the trial court erred by declining to give an instruction on adverse possession. We disagree.

{¶ 14} "The court must give all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder." *State v. Joy*, 74 Ohio St.3d 178, 181 (1995), citing *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. Conversely, " '[i]t is well established that the trial court will not instruct the jury where there is no evidence to support an issue.' " *State v. Mankin*, 10th Dist. No. 19AP-650, 2020-Ohio-5317, ¶ 34, quoting *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591 (1991), citing *Riley v. Cincinnati*, 46 Ohio St.2d 287 (1976). In reviewing a record to determine whether there is sufficient evidence to support the giving of an instruction, " 'an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction.' " *Murphy* at 591, quoting *Feterle v. Huettner*, 28 Ohio St.2d 54 (1971), syllabus.

{¶ 15} Generally, a trial court's jury instructions are reviewed for an abuse of discretion. *State v. Dovangpraseuth*, 10th Dist. No. 05AP-88, 2006-Ohio-1533, ¶ 30. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "An appellate court will not reverse a conviction in a criminal case due to jury instructions unless the jury instructions amount to prejudicial error." *State v. Munye*, 10th Dist. No. 14AP-744, 2015-Ohio-3362, ¶ 15, citing *State v. Moody*, 10th Dist. No. 98AP-1371, 2001 Ohio App. LEXIS 1111 (Mar. 13, 2001), citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph two of the

syllabus. Prejudicial error is found where a court fails to give an instruction that is pertinent to the case, states the law correctly, and is not covered by the general charge. *State v. Sneed*, 63 Ohio St.3d 3, 9 (1992); *State v. Angel*, 10th Dist. No. 19AP-771, 2021-Ohio-4322, ¶ 67, quoting *State v. Joy*, 74 Ohio St.3d 178, 181 (1995). "No purpose is served by giving instructions on law that does not apply to the facts and circumstances of the case." *State v. O.E.P.-T.*, 10th Dist. No. 21AP-500, 2023-Ohio-2035, ¶ 83.

{¶ 16} Here, there was no abuse of discretion in refusing to give an instruction on adverse possession. Adverse possession is not an affirmative defense to the charge of criminal trespassing and there is simply no evidence of an adverse possession claim in this case in any event. The record shows that Carter initially told the responding police that he owned the property through a land bank contract or maintenance lien. Carter cannot claim to both own the property and that he is attempting to gain title via adverse possession. Furthermore, it takes *21 years* to gain title of real property via adverse possession. *See Grace v. Koch*, 81 Ohio St.3d 577, 579 (1998). The evidence, including Carter's own testimony, shows that Carter had only been working on improving the property on and off for a few weeks prior to being confronted by the police on August 11, 2020. In short, an instruction on adverse possession was properly declined as it does not apply to the facts and circumstances of this case.

{¶ 17} Accordingly, Carter's first assignment of error is overruled.

**B. Assignment of Error Two**

{¶ 18} In his second assignment of error, Carter asserts the trial court plainly erred by declining to give an instruction on abandonment. This assignment of error is meritless.

{¶ 19} Carter concedes trial counsel did not object to this alleged error of the trial court and thus has waived all but plain error. Under Crim.R. 52(B), an appellate court may take notice of "plain errors" even when "they were not brought to the attention of the court." For an error to constitute "plain error" under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule, (2) the error must be "plain," meaning an "obvious" defect in the trial proceedings, and (3) the error must have affected "substantial rights," meaning the error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶ 20} An appellate court "recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 58 (10th Dist.), citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 139; *State v. Saleh*, 10th Dist. No. 07AP-431, 2009-Ohio-1542, ¶ 68. The defendant bears the burden of demonstrating plain error. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 14.

{¶ 21} Here, Carter argues the trial court plainly erred in failing to give a jury instruction on abandonment. But there is no evidence supporting a jury instruction that the property had been abandoned. The uncontested evidence showed Mr. Pigg owned the property; that he was current on tax payments; and that he had always addressed code violations received from the City. Merely because Mr. Pigg sometimes failed to keep the grass mowed does not equate to abandonment, and Carter has cited no authority for such a proposition. Furthermore, similarly to the discussion above regarding the requested instruction on adverse possession, Carter cannot simultaneously argue that he owned the property—as he told the police—and that the property had been abandoned.

{¶ 22} Finally, the evidence supporting a finding of guilt on the part of Carter was plentiful. There was no error, plain or otherwise, on the part of the trial court in declining to give a jury instruction on abandonment because the failure to give such an instruction did not affect the outcome of the trial.

{¶ 23} Accordingly, Carter's second assignment of error is overruled.

## C. Assignments of Error Three and Four

{¶ 24} Carter's third and fourth assignments of error challenge the sufficiency and manifest weight of the evidence and we address them together. Carter asserts that the evidence was insufficient to support his conviction for criminal trespassing and that the verdict for same is against the manifest weight of the evidence. We find no merit in either of these assignments of error.

{¶ 25} "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A reviewing court will not disturb the jury's verdict unless the court finds "that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001), citing *Jenks* at 273.

{¶ 26} In a review for sufficiency of the evidence, we do not engage in a determination of the credibility of the witnesses. *State v. Woodward*, 10th Dist. No. 03AP-398, 2004-Ohio-4418, ¶ 16, citing *State v. Goff*, 82 Ohio St.3d 123, 139 (1998). Rather, "we essentially assume the state's witnesses testified truthfully and determine if that testimony satisfies each element of the crime." *Id.*, citing *State v. Gore*, 131 Ohio App.3d 197, 200-01 (7th Dist.1999). Furthermore, the testimony of one witness, if believed by the jury, is sufficient to support a conviction. *State v. Winston*, 10th Dist. No. 16AP-664, 2018-Ohio-2525, ¶ 21, citing *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42.

{¶ 27} Comparatively, "[w]hile sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). This discretionary authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 28} Furthermore, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Gullick*,

10th Dist. No. 13AP-317, 2014-Ohio-1642, ¶ 10, quoting *State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 Ohio App. LEXIS 2245, *7 (May 28, 1996). "A jury, as the finder of fact and the sole judge of the weight of the evidence and the credibility of the witnesses, may believe or disbelieve all, part, or none of a witness's testimony." *Id.*, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 29} A conviction is not against the manifest weight of the evidence simply because the jury believed the state's version of events over the appellant's version. *Gullick* at ¶ 11, citing *State v. Houston*, 10th Dist. No. 04AP-875, 2005-Ohio-4249, ¶ 38, *rev'd and remanded in part on other grounds*. Rather, a reviewing court must give great deference to the jury's determination of witness credibility. *Id.*, citing *State v. Chandler*, 10th Dist. No. 05AP-415, 2006-Ohio-2070, ¶ 19. This is so because the jury " ' "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." ' " *State v. Huber*, 10th Dist. No. 18AP-668, 2019-Ohio-1862, ¶ 32, quoting *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 30} In order to convict a defendant of criminal trespassing in violation of R.C. 2911.21(A)(1), the state must prove that the defendant, without privilege to do so, knowingly entered or remained on the land of another. Privilege is defined as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12).

{¶ 31} In this case, Carter's arguments notwithstanding, there was sufficient evidence to meet all elements of criminal trespassing. Carter's own testimony was that he had entered the property on several occasions on and off for about five weeks prior to August 11, 2020. And despite his claims to the contrary, he did not have permission to be on the property, as testified to by Mr. Pigg. Furthermore, it is beyond dispute that Mr. Pigg was the legal owner of the property. (State's Ex. I.)

{¶ 32} Thus, based upon the foregoing, the state presented sufficient evidence to allow the jury to find, beyond a reasonable doubt, that Carter was guilty of criminal trespassing.

{¶ 33} The manifest weight of the evidence also supports Carter's conviction for criminal trespassing. First and foremost, Carter has not identified any real conflict in the evidence, nor does the record evince any such conflicting evidence. "[A] prerequisite for any reversal on manifest-weight grounds is conflicting evidence, more specifically, evidence weighing heavily against the conviction, such that the jury clearly lost its way and created such a manifest miscarriage of justice." (Internal quotations omitted.) *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 20, quoting *Thompkins* at 387 (1997), quoting *Martin* at 175. There is no evidence weighing heavily against the conviction in this case.

{¶ 34} Furthermore, in addition to the testimony of the police officers and Carter himself, the evidence in the form of the testimony of Carter's friend, I.H., overwhelmingly supports the jury's verdict. As set forth above, I.H. testified that she knew that Carter was not buying the property and that the group did not obtain permission from Mr. Pigg to enter onto the property. In short, the evidence was overwhelming that Carter was guilty of the offense for which he was convicted.

{¶ 35} Thus, the jury did not clearly lose its way in finding Carter guilty of criminal trespassing. Merely because it chose to find the state's witnesses credible does not mean Carter's conviction was against the manifest weight of the evidence. Therefore, there is sufficient evidence to support Carter's conviction for criminal trespassing, and his conviction is not against the manifest weight of the evidence.

{¶ 36} Accordingly, Carter's third and fourth assignments of error are overruled.

## IV. Disposition

{¶ 37} Based on the foregoing, Carter's first, second, third, and fourth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

MENTEL, P.J., and DORRIAN, J. concur.

————————————