[Cite as *State v. Preece*, 2024-Ohio-1556.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 22AP-252 |
| v. | : | (C.P.C. No. 19CR-4791) |
| William D. Preece, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on April 23, 2024

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee.

**On brief:** *The Law Office of Thomas F. Hayes*, and *Thomas F. Hayes*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, William D. Preece, appeals the judgment of the Franklin County Court of Common Pleas following a three-day jury trial and finding of guilt as to the offense of first-degree felony assault with a law enforcement victim specification.

{¶ 2} Preece was convicted of felonious assault for biting off the fingertip of Franklin County Sheriff's Department Sergeant Roger Howard while incarcerated at the Franklin County Jail. Preece was also acquitted of assaulting Deputy Ryan Fultz during an event that occurred a few minutes earlier. Preece contends that his assault on Howard would not have occurred but for the fact that Fultz assaulted Preece first, and he bit Howard's finger amidst a dispute about whether or not he would be transported to a hospital to receive medical attention for his altercation with Fultz.

{¶ 3}   Preece was incarcerated on the third floor of the Franklin County jail on September 12, 2019, and at that time he was being supervised by Fultz.  Inmates are permitted to be out of their cells for one hour each day, for "recreation time," and at the end of Preece's recreation time, he became upset that Fultz was forcing him to get off the telephone and go back to his cell.  Preece initially returned to his cell, but when Fultz came to shut the cell door, Preece attempted to push his way out, ultimately leading to Fultz striking Preece in the face at least twice.  Subsequently, a team of deputies were called to assist in subduing Preece, and he was handcuffed and escorted to the medical area to be checked for injuries by that team of deputies, including Howard.  This entire incident was videotaped, and the video was played for the jury without objection.  (*See* State's Ex. B-1; Feb. 23, 2022 Tr. Vol. 2 at 148.)

{¶ 4}   In the video, Preece appears to have many significant injuries on his forehead and face, including bruises, swelling, and bleeding, and he repeatedly blamed all those injuries on Fultz.  Preece can be seen talking to Howard, insisting that Fultz had "beat [him] up for no reason," and had taken advantage of the fact that Preece had an injured foot and was unable to walk normally.  Several other deputies had to hold Preece back, while Howard attempted to calm Preece down and ultimately had to pepper spray him.  Preece remains agitated.  After he is initially examined, he is placed in a wheelchair to be transported to the first floor of the jail.  Preece insists that Fultz beat him, expresses anger with other deputies, and acts combative, but repeatedly refuses any need to go the hospital. *Id*. He is transported to the first floor and placed into a holding cell, where several deputies are required to subdue him.  He gets pepper-sprayed again but continues to insist that he was beat up for no reason and refuses to cooperate with Fultz's instructions.

{¶ 5}   Preece then agrees he will go to the hospital, and is placed in a "spit hood," a mesh drawstring fabric bag used to prevent supervising deputies from coming into contact with a detainee's bodily fluids.  When the spit hood is placed on him, he is removed from the holding cell and placed in a wheelchair.  Preece continues to resist and repeatedly complains he is too hot and cannot breathe and then begins to convulse.  He is returned to the holding cell and briefly reexamined by medical staff but begins screaming that weight is being placed by deputies onto his broken foot.  He is then placed back to the wheelchair, and again readied to be transported to the hospital, but screams that he is being suffocated

by the spit hood and resists. In attempt to gain his compliance, several deputies reach near him and try to get him to stand so he can be transported, and Howard again moves to pepper spray Preece—it is during this affray that Preece bites Howard's hand and severs his right ring finger at the base of the nail. (*See* State's Ex's E1 through E12; Tr. at 264-75.) Preece is finally placed in a restraint chair by several deputies and is ultimately escorted out into an ambulance. (*See* State's Ex's B-1 and B-2; Tr. at 153-61.)

{¶ 6} When he was returned to the jail after his visit to the hospital, Preece was again housed on the third floor of the jail and was placed under the supervision of Fultz. On September 21, 2019, Preece was escorted by several deputies, including Fultz, to receive a visitor. That escort was video recorded, and during the walk to the visitation booth Preece spontaneously states that he "did not mean" for that to happen to Howard, that he had known Howard for many years and liked him, that he felt badly about Howard's injury, that he had been unable to see what was happening while inside the spit hood, and that he did not intend to hurt Howard. The video of these statements was played for the jury without objection. (*See* State's Ex. B-3; Tr. at 98.)

{¶ 7} After deliberation, the jury found Preece guilty of one count of the first-degree felonious assault charge relating to Howard but acquitted him of the first-degree felonious assault charge relating to Fultz. The trial court subsequently sentenced him to an indefinite term of six to nine years incarceration with mandatory post-release control. Preece timely appealed and asserts four assignments of error with the trial court's judgment. Each assigned error and its governing law are set forth below.

> 1. There is insufficient evidence of the "knowingly" state of mind with respect to Count 1.
>
> 2. The conviction of felonious assault (Count 1) is contrary to the manifest weight of the evidence.
>
> 3. Defendant-Appellant was denied a fair trial due to the introduction of evidence in violation of Evid. R. 404(B).
>
> 4. The trial court committed plain error in imposing an indefinite sentence under R.C. 2967.271, the Regan Tokes Law, because it violates the United States and Ohio Constitutions.

{¶ 8} Preece first argues that the evidence at trial did not establish that he knowingly assaulted Howard. To convict a defendant of felonious assault, the state must

demonstrate that the defendant knowingly caused serious physical harm to the victim. R.C. 2903.11(A)(1). Preece does not dispute that he bit Howard, or that he caused Howard serious physical injury. The only question here is whether the evidence at trial was sufficient to show that Preece was able to form the mental state of "knowingly" on these facts. As this court has previously explained:

> "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). When determining whether a defendant acted knowingly, his state of mind must be determined from the totality of the circumstances surrounding the alleged crime. Culpable mental states are frequently demonstrated through circumstantial evidence.

(Citations omitted.) *State v. Hayward*, 10th Dist. No. 17AP-390, 2018-Ohio-1070, ¶ 35.

{¶ 9} Pursuant to *State v. Jenks*, 61 Ohio St.3d 259 (1991), to determine whether a conviction is supported by sufficient evidence of guilt, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus, *following Jackson v. Virginia*, 443 U.S. 307 (1979). Preece argues that he did not act knowingly, but merely recklessly, and that therefore there is insufficient evidence of his guilt of felonious assault on a peace officer. He points to the fact that he had already been beat up by Fultz—he describes his injuries as " 'a busted lip,' swelling on top of his forehead, [and] a swollen and bloody nose, all because of being struck in the face several times by Deputy Fultz." (Appellant's Brief at 4; Tr. at 102-03.) He contends that these injuries, taken together with his subsequent treatment negated his ability to act knowingly. He observes that after he was injured by Fultz, he was pepper-sprayed once before being transported to an observation cell, then sprayed again and began spitting blood, saliva, and mucus, after which he was placed in the spit hood. Already handcuffed, he was placed into a wheelchair, and began convulsing. After being evaluated and assisted and then returned to the wheelchair, he began convulsing or writhing and apparently tried to kick another deputy. It was apparent at that point Howard sprayed him a third time, and it was during that melee Preece bit his finger.

{¶ 10} The videotaped evidence from September 21, 2019, construed most strongly in favor of the state, merely indicates that Preece was unable to see what was happening while inside the spit hood and that he did not "intend" to hurt Howard. (State's Ex. B-3; Tr. at 98.) That evidence tends to negate that Preece acted purposely, but it is entirely consistent with the state's theory that he acted knowingly. *Compare* R.C. 2901.22(A) ("A person acts purposely when it is *the person's specific intention to cause a certain result * * *.*") (emphasis added), with R.C. 2901.22(B) ("A person acts knowingly, *regardless of purpose, when the person is aware* that the person's conduct will probably cause a certain result * * *.") (emphasis added). The evidence presented does not suggest that a rational juror could only conclude that Preece was unaware that biting someone's finger could cause serious physical injury, nor does it suggest that Preece was wholly unaware that he bit someone. Accordingly, whether Preece acted knowingly is a question of weight for the jury, not a question of sufficiency, and Preece's first assignment of error lacks merit.

{¶ 11} In his second assignment of error, Preece contends that his conviction is contrary to the manifest weight of the evidence. An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), (superseded by constitutional amendment on other grounds). Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). Moreover, determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury may take note of inconsistencies at trial and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). Therefore, "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the

weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

**{¶ 12}** Upon review of all the evidence presented below, we cannot conclude that Preece was convicted against the manifest weight of the evidence. Preece's belligerence and lack of cooperation for over 20 minutes prior to biting Howard, documented on video, is compelling evidence that fully supports the jury's resolution of the charge against him. This is not the exceptional case where the evidence weighs heavily against conviction, and Preece's contention to the contrary is unpersuasive. His second assignment of error lacks merit and is overruled.

**{¶ 13}** In his third assignment of error, Preece argues that he was denied a fair trial. He specifically contends that he was unfairly prejudiced by Howard's testimony that Howard had encountered Preece "dozens" of times in the past, that Preece has "spit before," and that pepper spray "has worked in the past" on Preece. (*See generally* Appellant's Brief at 7; Tr. at 240, 254.) He also argues that he was unfairly prejudiced by the prosecutor's closing statement summarizing Howard's testimony. (*See* Feb. 24, 2022 Tr. Vol. 3 at 423-79.) Preece contends Howard's statements and the state's summary relying upon them were improper propensity evidence and were therefore inadmissible under Evid.R. 404(B)(1) ("Evidence of any other crime, wrong or act is not admissible to prove the person's character in order to show that on a particular occasion the person acted in accordance with the character.").

**{¶ 14}** But because there were no objections to any of the testimony challenged on appeal, Preece must establish that its admission created plain error, and that he cannot do. "A party claiming plain error must show (1) that an error occurred, (2) that the error was obvious, and (3) that the error affected the outcome of the trial." *State v. Jackson*, 149 Ohio St.3d 55, 2016-Ohio-5488, ¶ 134, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002) and Crim.R. 52(B). *See also State v. Carter*, 10th Dist. No. 23AP-136, 2024-Ohio-444, ¶ 19. And "the burden of demonstrating plain error is on the party asserting it." *Id.*, citing *State v. Jester*, 32 Ohio St.3d 147, 150 (1987).

**{¶ 15}** First, it is doubtful that Howard's testimony is improper propensity evidence, as each of his challenged statements seems to have been offered for the permissible purpose

of explaining Howard's action in pepper spraying Preece multiple times. *Compare* with Evid.R. 404(B)(2) (such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."). Several of the statements are merely repetitive of what Preece admitted in the September 21, 2019 video—that Preece had known Howard for 15 years and liked him, that Preece had never been a problem defendant in previous encounters with him, and that Preece regretted biting Howard. (*See* State's Ex. B3.) Moreover, the court gave a proper limiting instruction regarding the challenged testimony, specifically informing the jury:

> [E]vidence about defendant's incarceration for an unrelated matter cannot be considered for any other purpose. It was not received, and you may not consider it, to prove the character of the defendant in order to show that he acted in conformity with that character * * * [and the state] cannot satisfy its burden merely by implying that the defendant committed these crimes because his other acts suggest a propensity to commit crimes.

(Tr. Vol. 3 at 502.) For all these reasons, even if Preece had objected to Howard's statements below, it is more than likely that objection would have been overruled. But even if we were to somehow conclude that the admission of this evidence was erroneous under the first prong of the plain-error test, it was certainly not "obvious" error under the second prong of that test. And given the other overwhelming evidence that was presented, Preece cannot demonstrate that Howard's statements or the state's summary of them affected the outcome of the trial as required by the last prong of the plain-error test. Accordingly, Preece's third assignment of error lacks merit and is overruled.

{¶ 16} Finally, Preece argues that his indefinite sentence and the presumptive release feature of R.C. 2967.271 enacted in the Reagan Tokes Law violates his rights to trial by jury and due process of law under the Ohio and United States Constitutions and the requirement of separation of powers under the Ohio Constitution. After briefing in this case, the Supreme Court of Ohio issued a decision in *State v. Hacker*, ___ Ohio St.3d. ___, 2023-Ohio-2535, in which it rejected all three of these challenges to the law. *See id.* at ¶ 13-25 (Reagan Tokes Law does not violate separation of powers provisions of Ohio Constitution), ¶ 26-28 (Reagan Tokes Law does not violate right to jury trial), and ¶ 29-40

(Reagan Tokes Law does not violate right to due process of law). This court is bound by the decision in *Hacker*, and therefore must overrule Preece's fourth assignment of error.

{¶ 17} For all the foregoing reasons, Preece's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

MENTEL, P.J., and JAMISON J., concur.