[Cite as *State v. Williams*, 2025-Ohio-1794.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 24AP-382 |
| | | (C.P.C. No. 23CR-5236) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Waki A. Williams, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 20, 2025

**On brief:** [*Shayla D. Favor*], Prosecuting Attorney, and *Kimberly Bond*, for appellee.

**On brief:** *Rancour Scarsella LLC*, and *Paul L. Scarsella*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

JAMISON, P.J.

{¶ 1} Defendant-appellant, Waki A. Williams, appeals a judgment of the Franklin County Court of Common Pleas that convicted and sentenced him for one count of domestic violence. For the following reasons, we affirm that judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Throughout the spring and summer of 2023, Williams and his then-girlfriend, K.J., lived together in a house K.J. owned in west Columbus. On the evening of September 30, 2023, Williams borrowed K.J.'s car and went out with friends. When K.J. woke up on the morning of October 1, 2023, she discovered that Williams had not yet come home.

{¶ 3}   According to K.J., later that morning, Williams texted K.J. and informed her that he did not know where he had left her car.  He asked K.J. to use her car's GPS locator to find the car.  K.J. determined the car's location, obtained a ride to that location, and used her spare key to drive the car back to her house.

{¶ 4}   At Williams' trial, K.J. testified that when Williams came home later that day, he was very intoxicated and irritated that K.J. had retrieved her car.  Williams wanted K.J. to give him the spare key to her car, but she refused to do so due to his level of intoxication. In response, Williams "kept getting more and more angry, started shoving [K.J.] down, threw [K.J.] into a wall, [and] at one point dragged [K.J.] across the house by [her] hair." (May 29, 2024 Tr. at 146.)  K.J. lost consciousness "for a little bit" due to her injuries.  *Id.* at 147.  When she awoke, she tried to leave the house.  Williams, however, "corralled" her back into the house and "knocked [her] down a few more times."  *Id.*

{¶ 5}   K.J. eventually made it out of the house, but she did not have her glasses or phone.  She walked down the street, uncertain what to do next.  Watching from a block away, she saw Williams exit the house and sit on the front porch.  After about 15 minutes, K.J. realized that Williams had passed out.  She quietly reentered the house, locked the doors, and activated the security alarm.  Once Williams awoke and discovered he could not enter the house, he tried to batter the door open with his shoulder, and he broke a front window.  K.J. called 9-1-1, and the responding police officers arrested Williams.

{¶ 6}   Williams' recall of events differed from K.J.'s version of what happened on October 1, 2023.  According to Williams, when he got home, he and K.J. argued about Williams staying out all night.  He went out to the front porch to defuse the situation. Williams denied assaulting K.J. or dragging her around the house by her hair.

{¶ 7}   On October 11, 2023, Williams was indicted with: (1) one count of abduction, a third-degree felony in violation of R.C. 2905.02; (2) one count of aggravated menacing, a first-degree misdemeanor in violation of R.C. 2903.21; and (3) one count of domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25.  Williams pleaded not guilty to all counts.

{¶ 8}   At trial, K.J. and Williams testified to the facts set forth above. Additionally, a paramedic and a patrol officer, both of whom responded to K.J.'s 9-1-1 calls testified.  The

trial court also admitted into evidence photographs of K.J. taken by the patrol officer and recordings of K.J.'s 9-1-1 calls.

{¶ 9} The jury returned a verdict finding Williams not guilty of abduction and aggravated menacing, but guilty of domestic violence. The trial court ordered that Williams serve a one-year term of community control, with the requirements that Williams abide by the rules and regulations of the Adult Probation Department, stay away from K.J., and have no new convictions or further violations of the law. On May 30, 2024, the trial court issued a judgment entry convicting Williams of domestic violence and imposing the foregoing sentence.

## II. ASSIGNMENTS OF ERROR

{¶ 10} Williams now appeals the May 30, 2024 judgment, and he assigns the following errors:

> 1. THE TRIAL COURT ERRED AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION BY OVERRULING APPELLANT'S CRIM. R. 29 MOTION FOR JUDGMENT OF ACQUITTAL, AS THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION.
>
> 2. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THEREBY VIOLATED DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.

## III. STANDARD OF REVIEW

{¶ 11} Challenges to the sufficiency of the evidence and the weight of the evidence are distinctly different: " '[a] challenge to the sufficiency of the evidence attacks its adequacy . . . while a challenge to the weight of the evidence attacks is persuasiveness.' " *State v. Jordan*, 2023-Ohio-3800, ¶ 15, quoting *Disciplinary Counsel v. Smith*, 2017-Ohio-9087, ¶ 23. In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond

a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two the syllabus, *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, fn. 4 (1997). "[A]n appellate court does not ask whether the evidence should be believed but, rather, whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.' " *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *Jenks* at paragraph two of the syllabus.

{¶ 12} When an appellate court reviews whether a conviction is against the manifest weight of the evidence, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "Sitting as the 'thirteenth juror,' the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with the trier of fact's conclusion." *Jordan* at ¶ 17. However, the appellate court's authority to reverse on manifest-weight grounds " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *Martin* at 175.

## IV.  LEGAL ANALYSIS

{¶ 13} By his first assignment of error, Williams challenges the sufficiency of the evidence on the basis that plaintiff-appellee, State of Ohio, failed to prove that he acted knowingly. We disagree.

{¶ 14} A person is guilty of domestic violence if he or she "knowingly cause[s] or attempt[s] to cause physical harm to a family or household member." R.C. 2919.25(A). "Physical harm" used in this context means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 15} Williams does not contest that K.J. was a family or household member at the time of the offense. He also does not dispute that K.J. sustained physical harm. He only challenges whether the evidence was sufficient to prove that he knowingly caused or attempted to cause K.J. physical harm.

{¶ 16} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Determining a state of mind, such as whether a defendant acted knowingly, requires consideration of the totality of the circumstances surrounding the alleged crime. *State v. Preece*, 2024-Ohio-1556, ¶ 8 (10th Dist.); *accord State v. Johnson*, 2020-Ohio-4077, ¶ 15 (10th Dist.) (absent an admission by the defendant, the surrounding circumstances, including the defendant's actions, determine whether a defendant acted knowingly). Whether a defendant acted knowingly may be inferred from the surrounding circumstances because a defendant's mental state is difficult to prove with direct evidence. *State v. Mobley*, 2009-Ohio-5091, ¶ 28 (10th Dist.).

{¶ 17} In this case, K.J. testified that Williams knocked her around and shoved her down multiple times. He also dragged her by her hair from the kitchen, through the dining room, and into the living room. Additionally, K.J. stated that, "[o]ne of the times he threw me into the wall, I lost consciousness for a little bit." (Tr. at 147.) As shown by the photographs taken by the police officer who responded to K.J.'s 9-1-1 call, K.J. suffered bruising on her arms, a scratch on the neck, and a lump on her forehead. K.J. testified that she also sustained bruises to her legs, shoulder, and back.

{¶ 18} Given the level of violence Williams exhibited, a rational trier of fact could find beyond a reasonable doubt that he was aware his actions would probably result in injury to K.J. As K.J. testified, Williams dragged her by her hair through multiple rooms and threw her against the wall hard enough that she lost consciousness. The use of that amount of force gives rise to the inference that Williams understood that his actions would probably injure K.J. Consequently, sufficient evidence establishes that Williams knowingly caused physical harm to K.J. Accordingly, we overrule Williams' first assignment of error.

{¶ 19} By his second assignment of error, Williams argues that his conviction for domestic violence is against the manifest weight of the evidence. We disagree.

{¶ 20} In arguing that the manifest weight of the evidence does not support his conviction, Williams again relies on his contention that there is a lack of evidence to prove he knowingly caused or attempted to cause K.J. physical harm. At trial, Williams denied assaulting K.J. The jury did not believe him.

{¶ 21} The credibility of the witnesses is a matter primarily for the trier of fact to determine. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. A reviewing court gives deference to the jury's determination of witness credibility because the jury "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). In judging witness credibility, a jury "may believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67 (1964). Additionally, when deciding whether to believe a particular witness's testimony, a jury may " 'consider the reasonableness of the testimony and all the facts and circumstances surrounding the testimony.' " *State v. Greenwood*, 2021-Ohio-921, ¶ 41 (10th Dist.), quoting *State v. Brown*, 2016-Ohio-7944, ¶ 35 (10th Dist.).

{¶ 22} After reviewing the record, we cannot conclude that the jury lost its way and created such a manifest miscarriage of justice that we must reverse Williams' conviction for domestic violence. The jury found K.J. more credible, which was reasonable because the photographs of K.J.'s injuries corroborated K.J.'s testimony that Williams caused her physical harm. Additionally, as we stated above, given the extent of the violence Williams inflicted on K.J., a rational trier of fact could infer that he knew his actions would probably result in injuries to K.J. Accordingly, we overrule Williams' second assignment of error.

## V. CONCLUSION

{¶ 23} For the foregoing reasons, we overrule Williams' first and second assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

EDELSTEIN and DINGUS, JJ., concur.

————————————